Rosemary M. Rivas (Cal. Bar No. 209147)
Email: rrivas@finkelsteinthompson.com
Tracy H. Tien (Cal. Bar No. 253930)
Email: ttien@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Telephone (415) 398-8700/Facsimile (415) 398-8704

*Attorneys for Individual and
Representative Plaintiff Mark D. Lima*

Paul F. Rafferty (State Bar No. 132266)
Email: pfrafferty@jonesday.com
Eric M. Kennedy (State Bar No. 228393)
emkennedy@jonesday.com
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939/Facsimile: (949) 553-7539

*Attorneys for Defendant Gateway, Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK D. LIMA, on behalf of himself and all others similarly situated, | Case No. SACV 09-01366 DMG (MLGx) |
| Plaintiff, | **RULE 26(f) JOINT SCHEDULING CONFERENCE REPORT** |
| v. | |
| GATEWAY, INC., a Delaware Corporation, | Date:<br>Time:<br>Judge:       The Hon. Dolly M. Gee<br>Courtroom:   7 |
| Defendant. | |

1

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure ("FRCP"), Local Rule 26-1, Plaintiff and Defendant ("the Parties"), by and through counsel, hereby present their Rule 26(f) joint conference report and attached Exhibit A "Schedule of Pretrial and Trial Dates Worksheet," as required by the Court's Scheduling Meeting of Counsel Order.

## I.   PROCEDURAL HISTORY OF THE CASE.

On November 23, 2009, Plaintiff Mark Lima filed his initial Class Action Complaint against Defendant Gateway, Inc. on behalf of himself and all persons who purchased a Gateway XHD3000 LCD monitor ("Monitor").  On January 22, 2010, Lima filed the operative First Amended Class Action Complaint ("FAC") alleging causes of action for violations of: (1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and (3) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.

On February 22, 2010, Gateway filed a motion to dismiss arguing, among other things, that Lima was required to allege when his Monitor malfunctioned, that any malfunctions outside the warranty period are non-actionable, that the representations attributed to Gateway are "puffery," and that Lima failed to allege his claims with the specificity required by Fed. R. Civ. P. 9(b).   On April 26, 2010, the Court denied Gateway's motion to dismiss in its entirety.

On May 10, 2010, Gateway filed its answer and affirmative defense to the FAC.

Pursuant to Rule 26(f) of the FRCP, on May 7, 2010, the Parties met and conferred in good faith, the results of which are hereby found in this Joint Conference Report.

//

## II.  FACTUAL SUMMARY.

### A.  Plaintiff's Factual Allegations

On October 6, 2007, Gateway introduced the Monitor as purportedly the world's first "Quad-HD" display, delivering four-times more resolution than the standard 720p high definition monitor.  Gateway priced the Monitor at $1,700 and made a series of factual representations about the Monitor's features on the product packaging, in press releases, on the Internet, including on its own website at www.gateway.com, and through online review websites such as those operated by Amazon.com, CNET.com, and PCMAG.com.  Gateway touted the Monitor's expected life, its visual display and functionality as superior with specific statements of facts.

On its website and product specification materials, Gateway represented that the Monitor had a lamp life of ***50,000 hours minimum*** and that the Monitor provided "maximum investment protection and long-term functionality."  Lima alleges that it is common knowledge that an LCD monitor is expected to have at least the duration of its stated lamp life and with a lamp life of 50,000 hours, the Monitor had an expected life span of about 25 years if used five hours a day, or five years if used 24 hours a day, seven days a week.  Contrary to Gateway's representations, the Monitor failed to function as advertised; and it soon became essentially worthless even as a simple monitor.  In particular, Lima's Monitor produced objects such as opaque green bars and streaks running across the display.  These unwanted video artifacts became so severe they overwhelmed the underlying image such that the Monitor could not even function as a standard computer monitor.  Numerous consumers who bought the Monitor experienced similar failures.

Gateway also represented that the Monitor had a resolution of 2560 x 1600 pixels to allow consumers to "watch streaming video in a picture-in-picture

3

RULE 26(f) JOINT SCHEDULING CONFERENCE REPORT
SACV 09-01366 DMG (MLGx)

window, and resize the PIP window to full HD resolution, or adjust the color and transparency to just the way you want it."  Contrary to this representation, the Monitor did not provide a resolution of 2560 x 1600 pixels.

Gateway represented that the Monitor offered a "visually intense" gaming experience designed "to avoid skipped graphics or screen stutter" and that users could watch HD video and movies and high-speed graphics free of visual artifacts.  According to Gateway's advertising, the Monitor was ideal for users who want a truly remarkable, cinema-quality viewing experience.  Contrary to Gateway's representations, the Monitor displayed flickering images, green tint or bars over the entire screen, vertical multicolor lines, green lines, blanking, severe banding, screen flutter, blackouts, red flickering lines and complete screen failures.

Gateway represented that the Monitor would function as a "single, high-quality viewing device for the user's computer and video appliances, including desktop computer, notebook computer, Microsoft Xbox 360, Sony PlayStation 3, Nintendo WII, Blu-ray, TiVo, and DirecTV."  Contrary to these representations, the Monitor did not have video drivers for specific devices.  For example, when connected to a computer, the Windows operating system identifies the Monitor as "generic" and constantly reminds users that a driver needs to be installed.

Lima bought the Monitor in April 2008 for $1,638.75.  Before the purchase, Lima visited Gateway's website, read advertisements, and researched the Monitor on the Internet and compared its purported capabilities with those of other competing, high-end monitors.  Specifically, Lima found it important that Gateway advertised the Monitor as providing many years of effective service, having a high resolution suitable for high-speed graphics and HD video, providing high-quality graphics with no skipped graphics or screen stutter, and "uberfunctionality" allowing the Monitor to serve as the single display device for the user's HD and other video devices.

RULE 26(f) JOINT SCHEDULING CONFERENCE REPORT
SACV 09-01366 DMG (MLGx)

1        Lima's expensive Monitor became essentially useless for its intended

2   purposes.  Lima could not use it for high-resolution, high-speed graphics, cinema-

3   quality video, or high-quality HD TV.  Instead of the advertised high-performance

4   display promised, with no skipped graphics, screen stutter and visual artifacts,

5   Lima's Monitor produced objectionable visual artifacts, including opaque green

6   bars and streaks running across the display.  Lima's Monitor also failed to operate

7   at the advertised resolution without an additional video card which Lima was

8   forced to buy separately.  Gateway refused to repair Lima's Monitor, stating it was

9   outside of warranty, but offered to replace it with a $200 Acer monitor with

10   inferior specifications, which Lima declined.  Lima searched but was unable to

11   find any repair facilities that will fix the Monitor.

12        **B.**    **<u>Defendant's Statement of the Facts</u>**[1]

13        On October 6, 2007, Gateway introduced its XHD3000 30-inch LCD

14   computer monitor to the market.  Plaintiff Mark Lima purchased his Monitor in

15   April 2008 for $1,638.75.  The Monitor was under warranty from the time of

16   Lima's purchase until some point before he contacted Gateway's customer support

17   to complain that it had failed.

18        According to Lima, the alleged Monitor problems varied widely among

19   consumers.  Lima asserts that his Monitor's display "began producing abnormal

20   visual artifacts and would not perform as represented."  Lima also alleges that the

21   problems with the Monitor as to all consumers, although not necessarily with his

22   own, included "flickering images, green tint or bars over the entire screen, vertical

23   multicolor lines, green lines, blanking, severe banding, screen flutter, side button

24   issues, blackouts, red flickering lines, and complete screen failures."  Lima alleges

25   that ultimately, his Monitor did fail and that he contacted Gateway customer

26

27   [1] Lima disputes the manner in which Defendant characterizes the facts.  The
complaint speaks for itself.

28

RULE 26(f) JOINT SCHEDULING CONFERENCE REPORT
SACV 09-01366 DMG (MLGx)

support for assistance, but Gateway allegedly failed to provide a resolution to his problems because, he was told, the Monitor was outside warranty.

Critically, Lima does not state when his, or any other, Monitor stopped working or when he complained of its failure to Gateway customer support. Instead, he claims that his Monitor "failed within a relatively short period of time" after purchase.

Lima contends that Gateway made false representations about the Monitor in alleged advertisements.  In making these allegations, Lima does not allege when, where, by whom, or to whom any of these specific representations were made, other than to generally assert that some of them were advertised on the product's packaging, in press releases, and on the Internet.

Aside from the Monitor's failure at some undisclosed time, Lima does not allege that any of the specific problems Lima experienced with his Monitor were contrary to any one of Gateway's representations.  The only exception is Lima's allegation, without any of the required detail, that Gateway represented the display would be free of visual artifacts.  Lima states that his Monitor "began producing abnormal visual artifacts," but he does not say when, and so there is no way to tell how long the Monitor functioned without such alleged "artifacts"—in accordance with the representation—before they began appearing.

Most importantly, Lima never alleges that Gateway made representations that the Monitor would last for years.  Instead, he vaguely asserts that the above representations "gave the impression that the monitor would perform faithfully for many years."  He then alleges that "[b]ased on industry norms, and Gateway's representations concerning the superiority of XHD3000 and its quality, features and its specifications, Lima expected the monitor to perform as advertised for many years."

//

RULE 26(f) JOINT SCHEDULING CONFERENCE REPORT
SACV 09-01366 DMG (MLGx)

## III.   FRCP 26(f) ISSUES.

**A.   Initial Disclosures: FRCP 26(f)(3)(A)**.  The Parties agree to make initial disclosures on or before June 4, 2010 (or 30 days from the Rule 26(f) conference).  The Parties presently do not expect to need other changes in the timing, form or requirement for initial disclosures.

**B.   Discovery Plan and Deadlines: FRCP 26(f)(3)(B)**.

Lima presently expects discovery to include: the development and testing of the Monitor and its components; pre-release and post-release representations concerning the Monitor; the advertising, promotion and marketing of the Monitor; sales and distribution of the Monitor; complaints regarding the Monitor and issues with the Monitor; warranty data regarding the Monitor; and investigative and remedial actions taken with respect to the Monitor.

Gateway presently expects to conduct discovery on the merits of Plaintiff's individual claims, class certification, the identity of class members, class-wide damages, and Gateway's affirmative defenses.

**2.   Bifurcation of Discovery.**

The Parties believe that class and merits issues are intertwined and do not presently anticipate a need for bifurcation of discovery.

**3.   Discovery Deadlines.**

The Parties expect non-expert discovery to be completed by November 8, 2011.

**C.   Discovery Format: FRCP 26(f)(3)(C)**.

**1.   Electronically Stored Information.**  The Parties agree to produce electronically-stored documents in native format, where feasible.

**2.   Scanned Documents.**  Scanned documents shall be provided in searchable PDF format.

The Parties will meet and confer regarding document format issues.

7

**D.**     **Privilege: FRCP 26(f)(3)(D).**

    **1.**     **Preservation of Evidence.** Counsel for Plaintiff and Defendant have notified their respective principals of their duty to preserve evidence.

    **2.**     **Protective Order.** The Parties will present the Court with a proposed protective order to govern confidential information produced in the case, and are cooperating to draft the proposed protective order.

**E.**     **Discovery Limits: FRCP 26(f)(3)(E).** The Parties will meet and confer as necessary concerning exceeding the numerical limits under the Federal Rules of Civil Procedure on the number of interrogatories and depositions and the one-day seven-hour limits on depositions.

**F.**     **Need for Other Orders: FRCP 26(f)(3)(F).** The Parties presently do not anticipate the need for further orders that the Court should issue pursuant to Rules 26(c) or 16(b-c), but will meet and confer and alert the Court as necessary.

**IV.**     **LOCAL RULE 26-1 ISSUES.**

**A.**     **Case Complexity: L.R. 26-1(a).** The Parties agree that as a proposed class action, this is a complex case and the procedures set forth in the Manual for Complex Litigation may guide the Parties and the Court as appropriate.

**B.**     **Motion Schedule: L.R. 26-1(b).**

    **1.**     **Motion for Class Certification.**

On February 24, 2010, pursuant to the Parties' Stipulation, the Court ordered the case exempted from LR 23-1's requirement that a motion for class certification be filed within 90 days after service of the complaint.

The Parties agree that Plaintiff will file a Motion for Class Certification within 8 months following Defendant's first document production; that Defendant

shall have 30 days to respond to the motion; and that Plaintiff shall have 30 days for the reply.

        **2.**    **Other Motions.**  The Parties agree that any Motion for Summary Judgment or other dispositive motions shall be filed on or before November 22, 2011.

        **3.**    **Time for Responses to Motions.**  The Parties agree to meet and confer in good faith as to additional time needed for filing oppositions and replies to any motions, as was done regarding the recent Motion to Dismiss filed in this case.

**C.**    <u>**Settlement Discussions: L.R. 26-1(c).**</u>

        To date, the Parties have not made any efforts to settle or resolve this case.

        **1.**    **Type of Alternative Dispute Resolution Procedure.** Pursuant to LR 16-15.4, the Parties agree that private mediation is the form of ADR most suitable for this case.

        **2.**    **Timing of ADR.**  Information is still limited and the Parties have yet to ascertain the parameters of the case.  However, once sufficient information has been discovered or exchanged, the Parties will explore meaningful settlement discussions through a private non-judicial resolution proceeding.

**D.**    <u>**Jury Trial Estimate: L.R. 26-1(d).**</u>

        **1.**    **Jury Trial Demanded.**  Plaintiff has demanded a trial by jury on all claims so triable.

        **2.**    **Trial Date.**  The Parties presently contemplate a trial date of February 14, 2012.

        **3.**    **Trial Length.**  The Parties estimate a trial length of 21 days.

**E.**     **Additional Parties: L.R. 26-1(e).**  There is a possibility of other plaintiffs being added and one or more additional defendants being named. Gateway is presently contemplating whether it will join certain cross-defendants who may be responsible for certain of Lima's allegations if proven to be true.

**F.**     **Expert Witnesses: L.R. 26-1(f).**  Pursuant to the Court's Exhibit A to the Scheduling Meeting of Counsel, the Parties agree to disclose experts at least nine weeks before the final pretrial conference, unless where used to rebut the written report of another expert (in which case the disclosure should be made at least five weeks before the final pretrial conference).

Date:  May 21, 2010                    Respectfully submitted,

                                       **FINKELSTEIN THOMPSON LLP**


                                       By:   /s/ Rosemary M. Rivas

                                       Rosemary M. Rivas
                                       Tracy H. Tien
                                       100 Bush Street, Suite 1450
                                       San Francisco, CA 94104
                                       Telephone (415) 398-8700
                                       Facsimile (415) 398-8704

                                       Mila F. Bartos
                                       **FINKELSTEIN THOMPSON LLP**
                                       The Duval Foundry
                                       1050 30th Street, NW
                                       Washington, D.C. 20007
                                       Telephone:  (202) 337-8000
                                       Facsimile:  (202) 337-8090

                                       Gordon M. Fauth, Jr.
                                       Alexis A. Phocas
                                       **LITIGATION LAW GROUP**
                                       1801 Clement Avenue, Suite 101

10

RULE 26(f) JOINT SCHEDULING CONFERENCE REPORT
SACV 09-01366 DMG (MLGx)

Alameda, California  94501
Telephone (510) 238-9610
Facsimile (510) 337-1431

*Attorneys for Individual and Representative
Plaintiff Mark D. Lima*

Date:  May 21, 2010

By:

Paul F. Rafferty
Eric M. Kennedy
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone: (949) 851-3939
Facsimile: (949) 553-7539

*Attorneys for Defendant Gateway, Inc.*

11

RULE 26(f) JOINT SCHEDULING CONFERENCE REPORT
SACV 09-01366 DMG (MLGx)