Rosemary M. Rivas (Cal. Bar No. 209147)
Email: rrivas@finkelsteinthompson.com
Danielle A. Stoumbos (Cal. Bar. No. 264784)
dstoumbos@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Telephone (415) 398-8700/Facsimile (415) 398-8704

Gordon M. Fauth, Jr. (Cal. Bar No. 190280)
Email: gmf@classlitigation.com
Alexis A. Phocas (Cal. Bar No. 194481)
Email: aap@classlitigation.com
**LITIGATION LAW GROUP**
1801 Clement Avenue, Suite 101
Alameda, California  94501
Telephone (510) 238-9610/Facsimile (510) 337-1431

*Attorneys for Individual and Representative Plaintiff Mark D. Lima*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK D. LIMA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GATEWAY, INC.,<br><br>Defendant. | Case No. SACV09-01366 DMG (MLGx)<br><br>Assigned for all purposes to Hon. Dolly M. Gee<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GATEWAY, INC'S MOTION TO COMPEL ARBITRATION**<br><br>Date:          August 12, 2011<br>Time:          3:00 p.m.<br>The Honorable:   Dolly M. Gee<br>Ctrm:          7 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GATEWAY, INC., a Delaware
corporation,

                Third-Party Plaintiff,

     v.

TOP VICTORY INVESTMENTS
LIMITED, a Hong Kong corporation,

                Third-Party Defendant.

Complaint Filed:   November 23, 2009
FACC Filed:        January 22, 2010

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ........................................................................1

FACTUAL & PROCEDURAL BACKGROUND ....................................2

ARGUMENT ............................................................................5

I.    *CONCEPCION* MERELY ABROGATED THE *DISCOVER BANK* RULE……………...………………………………………....5

II.   GW WAIVED ITS RIGHT TO COMPEL ARBITRATION..............7

    A.    GW Had Knowledge of Its Right to Compel Arbitration........7

    B.    Plaintiff Will Suffer Prejudice Due to GW's Inconsistent Actions ................................................................9

III.  THE DRP IS UNENFORCEABLE AND UNCONSCIONABLE ...10

    A.    Since the NAF No Longer Conducts Consumer Arbitrations, GW's Specific Designation of the NAF Renders the Arbitration Clause Unenforceable ........................................10

        1.    The NAF Specific Designation is Integral to GW's Arbitration Clause ........................................................10

        2.    The Savings Clause is Inapplicable and Indefinite....12

    B.    The DRP is Unconscionable Under California Law.............14

    C.    Unlike the Supreme Court's Assumption in *Concepcion*, Compelling Arbitration Here Would Prevent Plaintiff From Vindicating His Statutory Rights ........................................21

    D.    The DRP Would Eliminate Public Injunctions by Private AGs……………………………………………...……24

IV.   CONCLUSION.......................................................................25

i

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Ablett v. Clauson,*
   43 Cal. 2d 280 (1954) ...................................................................................12

*Abramson v. Juniper Networks, Inc.,*
115 Cal. App. 4th 638 (2004) ........................................................ 17, 20

*Acorn v. Household Int'l, Inc.,*
   211 F.Supp.2d 1160 (N.D.Cal. 2002)....................................................20

*Agostini v. Felton,*
   521 U.S. 203 (1997)..............................................................................22

*Arellano v. T-Mobile USA, Inc.,*
   2011 WL 1362165 (N.D. Cal. April 11, 2011)................................. 8, 17

*Arellano v. T-Mobile USA, Inc.,*
   2011 WL 1842712(N.D. Cal. May 16, 2011)........................................22

*Arguelles-Romero v. Superior Court,*
   184 Cal.App.4th 825 (Cal. App. 2010)...................................................8

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
   24 Cal. 4th 83 (2000) ...................................................... 14, 15, 17

*AT&T Mobility LLC v. Concepcion,*
   131 S. Ct. 1740 (2011)............................................................... passim

*Booker v. Robert Half Int'l, Inc.,*
   413 F3d. 77 (D.C. Cir. 2005)..................................................................6

*Bradberry v. T-Mobile USA, Inc.,*
   2007 WL 1241936 (N.D. Cal. Apr. 27, 2007)................................ 16, 17

i

*Broughton v. Cigna Healthplans,*
   21 Cal.4th 1066 (1999) ...........................................................................25

*Brown v. Ralphs Grocery Co.,*
   2011 WL 2685959 (Cal. Ct. App., July 12, 2011) ...............................25

*Carideo v. Dell, Inc.,*
   2009 WL 3485933 (W.D. Wash. Oct. 26, 2009)...................................11

*Carney v. Verizon,*
   2010 WL 3058106 (S.D. Cal. Aug. 2, 2010).........................................8

*Carr v. Gateway, Inc.,*
   241 Ill. 2d 15 (2011) ..............................................................................11

*Circuit City Stores v. Adams,*
   279 F.3d 889 (9th Cir. 2002) ......................................................... 14, 17

*Cruz v. PacifiCare Health Systems, Inc.,*
   30 Cal. 4th 303 (2003) ...........................................................................25

*Davis v. Continental Airlines, Inc.,*
   59 Cal.App.4th 205 (1997) ......................................................................9

*DeLancie v. Birr, Wilson & Co.,*
   648 F.2d 1255 (9th Cir. 1981) .................................................................8

*Discover Bank v. Superior Court,*
   36 Cal. 4th 148 (2005) .........................................................................2, 7

*El Dorado Irrigation Dist. v. Traylor Bros., Inc.,*
   2006 WL 902561 (S.D. Cal. April 5, 2006) ...........................................7

*Fisher v. A.G. Becker Paribas Inc.,*
   791 F.2d 691 (9th Cir. 1986) ...................................................................8

*Flores v. Transamerica HomeFirst, Inc.,*
   93 Cal.App.4th 846 (2001) ....................................................................14

ii

TABLE OF AUTHORITIES
SACV09-01366 DMG (MLGx)

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991)............................................................. 6, 22, 25

*Green Tree Fin. Corp.-Ala. v. Randolph,*
  531 U.S. 79 (2000)...................................................................6

*Greenwood, Inc.,*
  383 S.C. 125 (2009)................................................................11

*Gutierrez v. Autowest, Inc.,*
  114 Cal. App. 4th 77 (2003) ...................................................25

*Hartley v. Superior Court,*
  2011 WL 2535582 (Cal. App. 4 Dist. June 28, 2011)...................21

*Hoffman Const. Co. v. Active Erectors & Installers, Inc.*
  969 F.2d 796 (9th Cir. 1992) .....................................................7

*In re American Express Merchants' Litigation,*
  634 F.3d 187 (2d Cir. 2011) .................................................. 6, 25

*In Re Salomon Inc. Shareholders' Derivative Litigation,*
  68 F.3d 554 (2d Cir. 1995) ......................................................11

*Jackson v. S.A.W. Entm't Ltd.,*
  629 F. Supp. 2d 1018 (N.D. Cal. 2009).....................................16

*Janda v. T-Mobile, USA, Inc.,*
  2006 WL 708936 (N.D. Cal. Mar. 17, 2006) .............................17

*Khan v. Dell, Inc., No.09-3701,*
  2010 WL 3283529 (D. N.J. Aug. 18, 2010) ...............................11

*Laster v. T-Mobile USA, Inc.,*
  407 F. Supp. 2d 11819 (S.D. Cal. 2005).................................. 16, 17

*Letizia v. Prudential Bache Sec., Inc.*
  802 F.2d 1185 (9th Cir. 1986) ...................................................8

iii

TABLE OF AUTHORITIES
SACV09-01366 DMG (MLGx)

*Little v. Auto Stiegler, Inc.,*
  29 Cal. 4th 1064 (2003) .......................................................................6

*Lyzwa v. Chu,*
  1998 WL 326768 (N.D. Cal. Feb. 2, 1998) ...........................................9

*Mercuro v. Superior Court,*
  96 Cal. App. 4th 167 (2002) ...............................................................18

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614 (1985)...................................................................... 6, 22

*Monex Deposit Co. v. Gilliam,*
  671 F. Supp. 2d 1137 (C. Dist. Cal. 2009) .........................................21

*Net Global Marketing, Inc. v. Dialtone, Inc.,*
  217 Fed. Appx. 598 (9th Cir. 2007)....................................... 14, 16, 20

*Oestreicher v. Alienware Corp.,*
  502 F. Supp. 2d 1061 (N.D. Cal. 2007) ..............................................16

*Ramirez-Baker v. Beazer Homes, Inc.,*
  636 F. Supp. 2d 1008 (E.D. Cal. 2008) ..............................................19

*Ranzy v. Tijerina,*
  393 Fed. Appx. 174 (5th Cir. 2010)....................................................11

*Roberts v. Adams,*
  164 Cal. App. 2d 312 (1958) ....................................................... 12, 13

*Shalala v. Ill. Council on Long Term Care,*
  529 U.S. 1 (2000).................................................................................22

*Smith v. Americredit Financial Services, Inc.,*
  2009 WL 4895280 (S.D. Cal. Dec. 11, 2009) .......................................8

*St. Agnes Med. Ctr. v. PacifiCare of Cal.,*
  31 Cal.4th 1187 (2003) ..........................................................................7

iv

TABLE OF AUTHORITIES
SACV09-01366 DMG (MLGx)

*Stewart v. GGNSC -Canonsburg, L.P.,*
  9 A.3d 215 (Pa. Super. Ct. 2010 ...........................................................................11

*Szetela v. Discover Bank,*
  97 Cal. App. 4th 1094 (2002) ...............................................................................15

*Ting v. AT&T,*
  319 F.3d 1126 (9th. Cir. 2003) ................................................... 17, 20, 21

*Trend Homes, Inc. v. Superior Court,*
  131 Cal. App. 4th 950 (2005) ...............................................................................16

*United Computer Sys., Inc. v. AT&T Corp.,*
  298 F.3d 756 (9th Cir. 2002) ..................................................................................7

*Wong v. T-Mobile USA, Inc.,*
  2006 WL 2042512 (E.D. Mich. July 20, 2006) ......................................................6

**Statutes**

9 U.S.C. § 2 ...............................................................................................................2
Cal. Bus. & Prof. Code § 17200 .............................................................................3
Cal. Bus. & Prof. Code § 17500 .............................................................................3
Cal. Civ. Code § 1670.5(a) ...................................................................................14
Cal. Civ. Code § 1750 .............................................................................................3
Cal. Civ. Code § 1751 ...........................................................................................25
Cal. Civ. P. § 1284.3 .............................................................................................18
Cal. Civ. P. Code § 1284.3(b) ...............................................................................18

v

TABLE OF AUTHORITIES
SACV09-01366 DMG (MLGx)

**INTRODUCTION**

Plaintiff Mark Lima filed this class action suit against Defendant Gateway, Inc. ("GW") after the monitor he bought from GW for almost $1700 became useless well before the promised lifespan.  The monitor exhibited green streaks, flickering images, blanking, severe banding and other problems contrary to GW's representations about performance and visual display.  Plaintiff's experience was similar to that of many other consumers.[1]

Since Plaintiff filed the case in November 2009, GW engaged in motion practice, impleaded a third party defendant, and participated in extensive discovery for more than a year and a half before filing its motion to compel based on a dispute resolution provision ("DRP") it buried within several dense paragraphs of legalese in the monitor's warranty card.  GW's excuse for its delay is that any motion to compel arbitration would have been futile before the U.S. Supreme Court issued its opinion in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ("*Concepcion*").  But this excuse is contradicted by GW's actions, namely, the motions to compel arbitration it filed in two other class actions pending against it while simultaneously litigating and engaging in settlement negotiations in this case.  Not only did GW waive its right to compel arbitration, but the DRP is literally unenforceable because it exclusively designates the National Arbitration Forum ("NAF") to handle all disputes.  The NAF, however, stopped accepting consumer arbitrations in 2009.

---

[1] One consumer created a video on You Tube about the monitor, titled, "Don't Buy a Gateway Monitor."  *See* htpp://www.youtube.com/watch?v=WoTe32WxjC8 (last visited July 15, 2011).

1

The DRP is also unenforceable because it is unconscionable and would essentially prevent Plaintiff from vindicating statutory and public rights. The fact that out of millions of customers, only 11 have initiated arbitration against GW since 2003 is telling. *Concepcion* did not reverse prior decisions holding that arbitration agreements cannot prevent parties from vindicating their statutory rights. Nor did *Concepcion* diminish generally available contract defenses such as unconscionability. Rather, the Supreme Court merely held that the rule announced in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), was preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. Plaintiff respectfully requests that the Court deny GW's motion.

## **FACTUAL & PROCEDURAL BACKGROUND**
### **Plaintiff's Allegations**

In October 2007, GW released its XHD3000 30-inch LCD monitor ("Monitor") and advertised it as a state-of-the-art monitor with a high-resolution display that would provide many years of reliable service. FAC ¶¶ 14-20.[2] In March 2008, Mr. Lima bought the Monitor and paid $1,638.75. FAC ¶ 3; Declaration of Mark Lima ("Lima Decl."), ¶ 3. The Monitor, however, failed to perform as advertised. FAC ¶ 21. First, the Monitor did not have the promised resolution right out of the box. FAC ¶¶ 22-23. Second, the Monitor had inherent defects that were contrary to GW's representations about the Monitor. FAC ¶ 21. Among other things, the Monitor exhibited flickering images, green tints over the screen, vertical multicolor lines, screen flutter, blackouts, and complete screen failures. *Id*. GW knew but failed to disclose that the XHD3000 had pre-existing

---

[2] References to "FAC ¶" are to Plaintiff's First Amended Complaint. (Dkt. No. 7)

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

defects that caused the monitors to fail within a relatively short period of time. FAC ¶¶ 22-24.  GW violated the Consumers Legal Remedies Act, Civil Code § 1750, *et seq.* ("CLRA"), the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, and the Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.* ("UCL").  FAC ¶¶ 44-68.

<u>**The Parties Actively Litigated the Case**</u>

<u>***The Complaint, GW's Motion to Dismiss, and the Court's Ruling***</u>

Plaintiff filed this case in November 2009 and amended the complaint in January 2010. (Dkt. Nos. 1 and 7).  GW moved to dismiss the case in February 2010 and made no mention of arbitration.  (Dkt. No. 9).  The parties briefed the motion to dismiss and after oral argument, the Court denied GW's motion in April 2010.  (Dkt. Nos. 9, 15, 16, 19 and 20).  It was not until after this Court's unfavorable ruling that GW filed an answer in May 2010 raising its right to arbitrate —for the first and only time aside from the current motion—in a boilerplate affirmative defense.  (Dkt. No. 22).  On May 24, 2010, the United States Supreme Court granted certiorari in *Concepcion*.  Unlike other parties with arbitration clauses in their contracts that quickly filed motions to compel arbitration and sought stays, GW continued to litigate this case in this court.[3]

<u>***GW Impleads Top Victory Investments, Ltd.***</u>

GW filed a motion for leave to file a third-party complaint in June 2010, which the Court granted. (Dkt. No. 30).  In July 2010, GW filed a third party complaint against Top Victory Investments Limited ("Top Victory"), and instituted foreign service on Top Victory in Hong Kong that same month.  (Dkt. No. 36).

---

[3] *See* accompanying Declaration of Rosemary M. Rivas ("Rivas Decl."), Exh. C.

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

### ***GW Propounded Discovery on Plaintiff and Produced over 20,000 Pages of Documents in Response to Plaintiff's Discovery Requests***

GW thoroughly participated in the discovery process by negotiating and filing a Joint Stipulation for Protective Order in June 2010 (Dkt. No. 25) and responding to Plaintiff's interrogatories and document requests regarding merits and class certification issues. *See* Rivas Decl. at ¶ 4. For example, Plaintiff sought sales figures and the number of complaints the company received regarding the Monitor (numerosity); the types of complaints received (typicality and superiority); and GW's advertisements related to the Monitor (predominance). *Id.*

GW responded to Plaintiff's interrogatories in August 2010 and produced over 20,000 documents in September 2010 relating to merits and class certification issues. *Id.* Plaintiff spent considerable efforts reviewing these documents and GW's discovery responses, and sent GW a detailed meet and confer letter in November 2010. *Id.* at ¶ 7. GW even supplemented its responses to Plaintiff's interrogatories in December 2010. *Id.* at ¶ 8.

In September 2010, four months after certiorari was granted in *Concepcion*, GW served Plaintiff with 49 document requests and several interrogatories relating to merits and class certification issues. *Id.* at ¶ 6.

### ***Plaintiff's Class Certification Preparation***

Plaintiff spent considerable time preparing for class certification by researching and contacting potential experts; formulating class certification theories; and gathering the evidence necessary to support the motion for class certification. *Id.* at ¶ 9. Plaintiff also prepared and served a Rule 30(b)(6) deposition notice on GW in February 2011 relating to merits and class certification

4

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

issues.  Rivas Decl., ¶ 10.  GW agreed on dates for the deposition, which Plaintiff prepared for and made travel arrangements.  *Id.* at ¶ 11.

### *GW Continued with the Litigation and Engaged in Settlement Negotiations Even Though it Filed Motions to Compel Arbitration in Two Other Cases Pending Against It*

In January 2011 and February 2011, respectively, GW filed motions to compel arbitration in two class actions pending against it, but not here. [4]  Instead, GW served inspection demands on third-party defendant Top Victory Investments, Ltd.  *Id.* at ¶ 12.  Throughout this time, the parties also repeatedly discussed settlement, and GW even agreed to extend the class certification deadline in April 2011 due to ongoing settlement negotiations.  (Dkt. No. 46); Rivas Decl., ¶ 13.

### ARGUMENT

### I.    *CONCEPCION* MERELY ABROGATED THE *DISCOVER BANK* RULE

In *Concepcion*, the Supreme Court merely held that the rule in *Discover Bank* was preempted by the Federal Arbitration Act ("FAA").  *Concepcion*, 131 S. Ct. at 1746.  The *Discover Bank* rule operated to invalidate a class action waiver when three common factors are present: (1) a consumer contract of adhesion; (2) predictably small damages; and (3) an allegation that the defendant corporation engaged in a scheme to cheat consumers.  *Id.*  The Supreme Court reiterated, however, that the FAA "preserves generally applicable contract defenses," such as unconscionability.  *Id.* at 1748.

---

[4] The cases are *Wilson v. Gateway, Inc.*, No. CV-09-7560 (C. D. Cal.) and *In re Gateway LX6810 Computer Products Litig.*, No. CV 10-1563 (C.D. Cal.) *See* Plaintiff's Request for Judicial Notice ("P's RJN"), Exhs. A-B.

*Concepcion* is not as sweeping as GW would like this Court to believe. First, *Concepcion* did not displace the equitable defense of waiver to a motion to compel arbitration.  Second, *Concepcion* did not extinguish the right of consumers to "raise generally applicable contract defenses" to arbitration agreements, such as unconscionability.  *Id.*, 131 S. Ct. at 1746 (citing *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)).  Third, *Concepcion* did not reverse well-established Supreme Court precedent holding that an arbitration agreement is unenforceable if it prevents the litigant from effectively vindicating their statutory rights in arbitration.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 637 (1985); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28 (1991) [5]; *see also In re American Express Merchants' Litigation*, 634 F.3d 187, 189 (2d Cir. 2011);  *Little v. Auto Stiegler, Inc.,* 29 Cal. 4th 1064, 1078 (2003); *Booker v. Robert Half Int'l, Inc.*, 413 F3d. 77, 81 (D.C. Cir. 2005); *Wong v. T-Mobile USA, Inc.*, 2006 WL 2042512 (E.D. Mich. July 20, 2006).

---

[5] Further, *Concepcion* did not hold that class action bans must be enforced where they would prevent the vindication of statutory rights.  Rather, the Court assumed that AT&T's arbitration clause would not prevent the plaintiffs from vindicating their rights.  Indeed, in its briefing, AT&T made clear that it did not seek to "mandate enforcement of every [class action ban]," but rather that courts could continue to "invalidate agreements requiring bilateral arbitration upon finding that a customer is unable to vindicate her rights on an individual basis."  Reply Br. For Petitioner, *AT&T Mobility LLC v. Concepcion*, 2010 WL 4312794 (U.S.), 1 (2010).

6

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

## II.   GW WAIVED ITS RIGHT TO COMPEL ARBITRATION

GW waived its right to arbitrate in this case because (1) it had knowledge of its right to compel arbitration; (2) it acted inconsistent with its right to compel arbitration; and (3) Plaintiff relied on GW's actions, and will be prejudiced if this court compels arbitration.  *Hoffman Const. Co. v. Active Erectors & Installers, Inc.* 969 F.2d 796, 798 (9th Cir. 1992); *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002).[6]

### A.   GW Had Knowledge of Its Right to Compel Arbitration

GW failed to move to compel or stay the case after the Supreme Court granted certiorari in *Concepcion*, **though it did based on the same DRP at issue here in two other class action cases pending against it**, *Wilson* and *In re Gateway LX6810 Computer Products Litig.*  *See* P's RJN, Exhs. A-B.   Thus, GW was aware of the DRP and its right to compel arbitration.[7]

GW's claim that any demand for arbitration would have been futile before *Concepcion* is inaccurate.  *Discover Bank* never dictated a *per se* rule against class action waivers; instead *Discover Bank* held that each clause was to be analyzed on its own merits.  36 Cal 4th 148, 162 (2005) ("We do not hold that all class action waivers are necessarily unconscionable.").  Indeed, before *Concepcion*, a number

---

[6] California state courts apply a six-factor test to determine waiver.  *St. Agnes Med. Ctr. v. PacifiCare of Cal.,* 31 Cal.4th 1187 (2003).   Although the factors vary slightly, both the Ninth Circuit and California state court tests analyze essentially the same factors.  *El Dorado Irrigation Dist. v. Traylor Bros., Inc.*, 2006 WL 902561, at *6 (S.D. Cal. April 5, 2006).

[7] The court in *Wilson* held that "Gateway does not contend that it was ever unaware that its own Limited Warranty Agreement contained an arbitration provision".  P's RJN, Exh. 3 at 49.  GW's contrary argument is disingenuous.

---

7

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

1    of courts granted motions to compel arbitration notwithstanding the presence of a

2    class action waiver. *See, e.g., Arellano v. T-Mobile USA, Inc.*, No. C 10-05663,

3    2011 WL 1362165 (N.D. Cal. April 11, 2011).

4        GW's reliance on *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691 (9th Cir.

5    1986), and *Letizia v. Prudential Bache Sec., Inc.* 802 F.2d 1185 (9th Cir. 1986), is

6    misplaced.  The Ninth Circuit in both *Fisher* and *Letizia* held that the defendant did

7    not waive its right to compel arbitration because any demand would have been

8    futile under the then applicable Ninth Circuit decision *DeLancie v. Birr, Wilson &*

9    *Co.*, 648 F.2d 1255 (9th Cir. 1981).  *Fisher*, 791 F.2d at 695; *Letizia*, 802 F.2d at

10   1187.  *DeLancie*, however, applied a *per se* rule that "arbitration should be denied

11   where common law claims are intertwined with securities law violations." *Fisher*,

12   791 F.2d at 693.  In contrast to the *per se* rule in *DeLancie*, *Discover Bank's* case-

13   by-case approach provided an opportunity to successfully seek arbitration

14   notwithstanding the presence of a class action waiver. *See, e.g., Arellano,* 2011

15   WL 1362165 at *7, (compelling arbitration); *Smith v. Americredit Financial*

16   *Services, Inc.,* No. 09cv1076 DMS (BLM), 2009 WL 4895280, *7 (S.D. Cal. Dec.

17   11, 2009); *Arguelles-Romero v. Superior Court*, 184 Cal.App.4th 825, 844 (Cal.

18   App. 2010).

19       GW mischaracterizes the decision, *Carney v. Verizon*, No. 09-1854, 2010

20   WL 3058106 (S.D. Cal. Aug. 2, 2010).  Contrary to GW's portrayal, the court

21   there specifically held that the defendants knew of their right to compel arbitration

22   given that they wrote the arbitration agreement.  *Id.* at *2.  Further, while the Court

23   in *Carney* held that the defendants there did not waive their right to compel

24   arbitration, it did so on the ground that their actions were not inconsistent with the

25   right to compel arbitration. The defendant there, however, moved to compel

8

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

arbitration and stay the case just a few days after the Supreme Court granted certiorari in *Concepcion*.  In contrast here, GW invoked the machinery of the court by moving to dismiss, impleading a third party and extensively engaging in the discovery process.  GW did, however, move to compel arbitration and to stay two other class action cases pending against it in early 2011.

**B.**   **Plaintiff Will Suffer Prejudice Due to GW's Inconsistent Actions**

GW waited more than *11 months* after certiorari was granted in *Concepcion* before demanding arbitration.  During this time, GW's behavior evidenced an intent to defend this case in this Court on a class basis, as detailed in Part II.C. *infra.*  Rivas Decl., ¶¶ 3-13.  A party may not take advantage of benefits it would not otherwise have in arbitration without prejudicing the other party.  *Lyzwa v. Chu*, No. 97-20053, 1998 WL 326768, *4 (N.D. Cal. Feb. 2, 1998).

GW admits that for *11 months*, it did "nothing more than wait for the law to change."  Def. Global Brief at 7.[8]  This fails to explain why GW did not move to compel arbitration and stay the case pending *Concepcion's* outcome—**even though it filed a motion to stay in two other cases pending against it in the Central District**, in which it admitted that all parties and the Court would be prejudiced if the case were to continue to be litigated: "Litigating this case while the Supreme Court decides a threshold issue that could be dispositive of Plaintiff's right to proceed in this Court against Gateway would result in a ***waste of resources for all the parties and the Court and would irreparably harm Gateway***[.]"[9]

---

[8] GW's argument that it preserved its right to demand arbitration by raising it as a boilerplate defense in its answer is unpersuasive.  *Davis v. Continental Airlines, Inc.*, 59 Cal.App.4th 205, 213 (1997); *Wilson,* Plaintiff's RJN Exh. 3 at 50, (same).

[9] *See* Plaintiff's RJN Exh. 1 at 12 and Exh. 2 at 33-34.

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

Thus, GW effectively conceded that a party will be prejudiced if forced to devote resources which later prove to be unnecessary.  Plaintiff's RJN, Exh. 1 at 12 and Exh. 2 at 33-34.  GW cannot now backtrack and claim that Plaintiff will not be prejudiced if forced to arbitration.   The *Wilson* case is factually similar to the current case.  In both cases, GW waited *months* after certiorari was granted in *Concepcion* to move to compel arbitration or stay and engaged extensively in discovery, among other things.  P's RJN, Exh. 3 at 49; Rivas Decl., ¶¶ 3-13.   As the *Wilson* court noted, compelling arbitration will result in prejudice.[10]

## III.   THE DRP IS UNENFORCEABLE AND UNCONSCIONABLE

### A.   Since the NAF No Longer Conducts Consumer Arbitrations, GW's Specific Designation of the NAF Renders the Arbitration Clause Unenforceable

#### 1.   The NAF Specific Designation is Integral to GW's Arbitration Clause

Defendant's DRP contains the following provisions:

- You and Gateway agree that any Dispute between you and Gateway *will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules* . . . Information may be obtained from the NAF online at www.arbforum.com, by

---

[10] The recent case post-*Concepcion* rejecting waiver is factually distinguishable. The court in *In re Cal. Title Ins. Antitrust Litig.*, did not find prejudice because "substantive discovery ha[d] only recently commenced" and plaintiff failed to establish that "[d]efendants had knowledge of an existing right to compel arbitration." *Id.*, 2011 WL 2566449, at *3 (N.D. Cal. June 27, 2011).

10

calling 800-474-2371 or writing to P.O. Box 50191, Minneapolis, MN, 55405.
Hogan Decl., Exh. 1 at ¶ 7. (emphasis added).

- If you prevail in the arbitration of any Dispute with Gateway, Gateway will reimburse you for any fees you paid to NAF in connection with the arbitration. *Id.*

- Should either party bring a Dispute in a forum other than NAF, the arbitrator may award the other party reasonable costs and expenses, including legal fees, incurred in staying or dismissing such other proceedings or in otherwise enforcing compliance with the dispute resolution provision.  Hogan Decl., Exh. 1.

The above provisions, including the phrase "will be resolved exclusively and finally" show that the NAF designation was integral to the DRP.  In fact, numerous courts have held that the designation of a specific forum and the forum's rules alone are evidence of intent to arbitrate exclusively in that particular forum and therefore integral to the agreement to arbitrate.  *Carideo v. Dell, Inc*., No.C06-1772JLR, 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009); *Khan v. Dell, Inc., No.09-3701, 2010 WL 3283529 (D. N.J. Aug. 18, 2010); Stewart v. GGNSC – Canonsburg, L.P., 9 A.3d 215 (Pa. Super. Ct. 2010); Grant v. Magnolia Manor – Greenwood, Inc., 383 S.C. 125 (2009); Ranzy v. Tijerina, No.10-2051, 393 Fed. Appx. 174 (5th Cir. 2010) (per curiam) (unpublished); see also In Re Salomon Inc. Shareholders' Derivative Litig.*, 68 F.3d 554 (2d Cir. 1995).

And according to the court in *Carr v. Gateway, Inc.,* 241 Ill. 2d 15, 33 (2011), GW's penalty provision "clearly indicates that the designation of the NAF as the arbitral forum is integral to the agreement", and therefore it concluded that it could not compel the parties to arbitration.  The fact that no consumer arbitrations

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

were filed with JAMS or AAA from 2003 to the present also supports Plaintiff's position.  Rivas Decl., ¶¶ 14-15.

### 2.     The Savings Clause is Inapplicable and Indefinite

The NAF stopped accepting arbitrations between companies and private individuals in July 2009, and therefore, the DRP cannot be enforced.  Nevertheless, GW seeks to invoke a "savings clause" which only says, "You and Gateway will agree on another arbitration forum if NAF ceases operations."  Hogan Decl., Exh. 1, ¶ 7.  This provision, however, is only applicable if NAF "ceases operations."  But NAF has not ceased operations; it has merely stopped accepting consumer arbitrations pursuant to a consent decree it entered into with the Minnesota Attorney General arising out of allegations that NAF failed to disclose that it had financial ties to the debt-collection industry.[11]  Since NAF continues to operate (*see* www.adrforum.com), the provision never comes into play.  Any argument to the contrary violates the plain meaning of the contract.

Second, even if the provision covers the situation here, which it does not, the savings clause is nevertheless unenforceable under general contract law principles. "The rule is well established in this state[:] . . . if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such further agreement.  Since either party by the terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise."  *Ablett v. Clauson*, 43 Cal. 2d 280, 284-85 (1954); *Roberts v. Adams*, 164 Cal. App. 2d 312, 314 (1958); *see also* 2 Corbin, Contracts (2004) § 95, p. 397 ("When the evidence

---

[11]http://www.businessweek.com/investing/wall_street_blog/archives/2009/07/big_arbitration.html (last visited July 15, 2011).

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

clearly shows . . . that the complete subject matter that is under consideration is left for further negotiation and agreement, there is no contract, for vagueness or indefiniteness of terms, but for lack of any terms.").

Here, since the DRP ostensibly requires that the parties agree to an alternative arbitrator and there is no guarantee that the parties can, the provision is unenforceable. As in *Roberts*, too many terms were left uncertain, especially in light of the exclusive designation of the NAF.  For example, what are the standards for selecting an arbitrator? Will NAF's rules still apply to the arbitration, and if not, which rules will apply?  If Plaintiff is the prevailing party, can he enforce the contractual term that requires GW to pay the arbitrator's fees paid to NAF? Probably not.  To illustrate the difficulty, JAMS will not enforce the DRP because it does not comply with JAM's standards, such as Rule 7, which requires companies to pay for all arbitration costs over $250.  P's RJN, Exh. 4.  This is directly in conflict with the DRP, which requires Plaintiff to pay arbitration costs. These issues underscore the difficulty in forcing the parties to arbitration. Accepting GW's argument would require the Court to rewrite the DRP.

This is also not a situation where there are indicators of what the parties would have agreed upon, given GW's exclusive designation of the NAF and its rules and Plaintiff's staunch opposition to arbitration.   "[I]n the absence of internal or external indicia of what the parties would have agreed upon, the court cannot supply the omitted provision, for that would be tantamount to making a contract for the parties."  *Roberts*, 164 Cal. App. 2d at 314.  Finally, GW could have provided more definite terms by providing alternative arbitration forums or it could have included a mechanism if the parties could not agree on an alternate forum. The FAA does not require the contrary and only requires that "private arbitration

13

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

agreements be enforced according to their terms." *Concepcion*, 131 S. Ct. at 1748. It does not permit the Court to rewrite the parties' contract.

**B.      The DRP is Unconscionable Under California Law**

*Unconscionability Standards:*  The DRP is unenforceable on unconscionability grounds.  As discussed above, *Concepcion* reiterated that Section 2 permits arbitration agreements to be declared unenforceable by generally applicable contract defenses such as unconscionability.  *Id.*, 131 S. Ct. at 1746.   In determining whether an agreement to arbitrate is valid, federal courts must "apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores v. Adams,* 279 F.3d 889, 892 (9th Cir. 2002).  In California, "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract [.]" Cal. Civ. Code § 1670.5(a).  Whether an arbitration clause is unconscionable involves an analysis of *procedural* and *substantive* unconscionability.  *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 114 (2000).

While both procedural and substantive unconscionability must be present, they need not be present in the same degree.  *Id.* Courts use a sliding scale, wherein "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.*  Here, an examination of GW's DRP reveals that it is both procedurally and substantively unconscionable.

*Procedural Unconscionabilty:*  Under California law, procedural unconscionabilty requires either of two factors: oppression or surprise.  *Net Global Marketing, Inc. v. Dialtone, Inc.,* 217 Fed. Appx. 598, 601 (9th Cir. 2007); *Flores v. Transamerica HomeFirst, Inc.,* 93 Cal.App.4th 846, 853 (2001).  The analysis

14

begins with "an inquiry into whether the contract is one of adhesion," *i.e.*, a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz,* 24 Cal. 4th at 113. When the weaker party is presented the clause on a "take it or leave it" basis "without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present." *Szetela v. Discover Bank,* 97 Cal. App. 4th 1094, 1100 (2002). Here, the DRP is clearly oppressive. It was drafted by GW, a corporation with superior bargaining strength, is a form contract, and was presented on a "take it or leave it" basis. Hogan Decl., Exh. 1. Thus, the DRP is procedurally unconscionable. *See Szetela*, 97 Cal. App. 4th at 1100.

Additionally, the manner in which the DRP is presented meets the element of surprise. First, Mr. Lima was not provided with any information regarding the arbitration or class action waiver provisions before he bought his monitor. Lima Decl. ¶ 3. Mr. Lima was not required to review, sign, or acknowledge his understanding of the DRP, and his Receipt did not reference the provision either. *See* Hogan Decl., Ex. 1; Lima Decl., Ex. A. Nor did Mr. Lima's Receipt reference the Warranty. Lima Decl., Ex. A. Moreover, the DRP was deceptively buried in a description of the monitor's *Warranty*, which was packaged in the product box. Hogan Decl., ¶ 2. Even if the DRP had been conspicuously disclosed, Mr. Lima could not have reviewed it until weeks after he made his purchase, opened the box, and sorted through a number of other documents (e.g., instructions) to find the DRP, which was printed in tiny font and in the seventh paragraph of dense,

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

1  legalese. Here, as in *Net Global Marketing*, this arbitration clause was not "clearly

2  disclosed" and could have been "easily overlooked." 217 Fed. Appx. at 601.[12]

3  GW's claim that Mr. Lima had "constructive knowledge" of the DRP

4  because he contacted GW to fix his monitor is unavailing. Mr. Lima does not

5  recall reviewing the Warranty and called GW assuming there was a warranty that

6  covered repairs. Lima Decl. ¶¶ 5, 6. Further, GW's argument that the DRP was in

7  "bold, uppercase font, making it impossible to miss" ignores the inconspicuous

8  manner in which the arbitration clause was presented. GW cannot even point to

9  any place where Mr. Lima signed or initialed his understanding of the DRP (Hogan

10  Decl., Ex. 1), a fact that distinguishes this case from GW's cited authorities. *See*

11  *Jackson v. S.A.W. Entm't Ltd*., 629 F. Supp. 2d 1018, 1023 (N.D. Cal. 2009)

12  (plaintiff *signed* contract with arbitration clause); *Trend Homes, Inc. v. Superior*

13  *Court*, 131 Cal. App. 4th 950, 959 (2005) (initials below arbitration clause).

14  GW's argument that Plaintiff had 15 days from receipt of the Warranty to

15  return his monitor and avoid being bound by the DRP has already been rejected by

16  the Ninth Circuit in *Laster v. T-Mobile USA, Inc.,* 407 F. Supp. 2d 1181, 1188-89

17  (S.D. Cal. 2005) *aff'd,* 252 F. App'x. 777 (9th Cir. 2007); *see also Oestreicher v.*

18  *Alienware Corp.,* 502 F. Supp. 2d 1061, 1070 (N.D. Cal. 2007) *aff'd,* 322 F. App'x.

19  489 (9th Cir. 2009) (arbitration provision procedurally unconscionable despite

20

21

22

23

24

25  _____

26  [12] California's test for procedural unconscionability simply does not require a

27  showing of no market alternatives. *See, e.g., Nagrampa,* 469 F.3d at 1283;

28  *Bradberry v. T-Mobile USA, Inc.,* C06-6567 CW, 2007 WL 1241936, at *5 (N.D.

Cal. Apr. 27, 2007).

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

defendant's argument that the plaintiff "had an opportunity to cancel his purchase within thirty days.").  The Court should similarly reject this argument here.[13]

**Substantive Unconscionability.**  An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "one-sided results." *Armendariz,* 24 Cal. 4th at 114; *see also Abramson v. Juniper Networks, Inc*., 115 Cal. App. 4th 638, 656 (2004); *Concepcion,* 131 S. Ct. at 1749 (citing *Armendariz*).  Gateway's DRP is both overly harsh and one-sided in part, "because it imposes on some consumers costs greater than those a complainant would bear if he or she would file the same complaint in court." *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th. Cir. 2003) (finding such provision unconscionable); *see Circuit City Stores*, 279 F. 3d at 894.  As the California Supreme Court explained in *Armendariz,* "the arbitration process cannot generally require the employee to bear any <u>type</u> of expenses that the employee would not be required to bear if he or she were free to bring the action in court." *Id.*, 24 Cal. 4th at 110-110 (emphasis in original).  "This means 'the employer [must] pay all types of costs that are unique to arbitration,' including the

---

[13] *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1362165 (N.D. Cal. Apr. 11, 2011), was wrongly decided and also contradicts the findings of three other courts examining the same arbitration provision. *See Janda v. T-Mobile, USA, Inc.,* C 05-03729 JSW, 2006 WL 708936, at *5 (N.D. Cal. Mar. 17, 2006) (procedurally unconscionable where arbitration clause was buried in a document "included in T-Mobile's phone box, rather than on the face of a Service Agreement."); *Laster*, 407 F. Supp. 2d at 1181 (arbitration clause was procedurally unconscionable because it was "placed inside the sealed box containing her new phone."); *Bradberry v. T-Mobile USA, Inc.,* C06-6567 CW, 2007 WL 1241936, at *6 (N.D. Cal. Apr. 27, 2007) (procedurally unconscionable where no "mention of the Class Action Waiver in the Service Agreement [in the] documents given to Plaintiff when he purchased cellular phone service from Defendant.").

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

arbitrator's fee." *Mercuro v. Superior Court,* 96 Cal. App. 4th 167, 181 (2002) (quoting *Armendariz,* 24 Cal.4th at 113.)

In *Concepcion,* the Supreme Court expressly noted that the arbitration provision at issue required AT&T to pay all the costs of arbitration. *See Concepcion,* 131 S. Ct. at 1744. By contrast, under the DRP, the consumer must pay all the costs of arbitration. Hogan Dec., Ex. 1 ¶ 7. Further, the AT&T provision allowed the consumer the low-cost option of filing a claim in small claims court. *Concepcion,* 131 S. Ct. at 1744. The Gateway provision allows no such option, which both courts and arbitral forums recognize as essential to a valid arbitration clause.[14] Hogan Dec., Ex. 1 ¶ 7. Recognizing these two fatal omissions, GW's argument that "organizations exist that charge reasonable fees," states (incorrectly) that the costs of arbitration are "relatively the same as those associated with small claims lawsuits . . . ," and misleadingly suggests that Plaintiff might obtain relief from excessive arbitration fees by seeking a waiver under Cal. Civ. Proc. § 1284.3.[15] But Gateway itself concedes it would cost Plaintiff at least $125 (AAA) or $250 (JAMS) to file a claim for monetary damages in arbitration. *Id.* Those figures are, respectively, 250% and 500% higher than the total fee of

---

[14] Contrary to Gateway's suggestion that the American Arbitration Association ("AAA") and JAMS are available arbitration options, AAA and JAMS do not accept cases under arbitration agreements such as Gateway's that preclude the consumer from seeking a remedy in small claims court. *See* http://www.adr.org/si.asp?id=5649;  http://www.jamsadr.com/rules-consumer-minimum-standards/.

[15] By its own terms, Section 1284.3 provides potential relief only to "an indigent consumer." Cal. Civ. P. Code § 1284.3(b). Gateway provides no authority for the statute's applicability to the unconscionability analysis.

18

$50 it would cost a consumer to file a claim for $5,000 in small claims court, and do not even include the arbitrator's fees. *See*

*http://www.courtinfo.ca.gov/selfhelp/smallclaims/scbasics.htm*.  Also, there is no guarantee that Gateway would agree to a forum with "reasonable" fees.

Gateway argues that NAF would have charged the consumer only $81.50. In fact, under the present NAF fee structure, found on the website at http://www.adrforum.com, it would cost from $500 to well over $1,000 bring a modest claim (consumer claims are no longer a category heard by NAF). Furthermore, Plaintiff also pleads claims for injunctive relief.  As stated on the AAA website, if the consumer's claim is non-monetary, then the consumer must pay an Administrative Fee in accordance with the Commercial Fee Schedule, and must "also deposit one-half of the arbitrator's compensation" ($750 per day for in-person hearing).  *See* http://www.adr.org/sp.asp?id=22039.

In *Ramirez-Baker v. Beazer Homes, Inc.,* 636 F. Supp. 2d 1008 (E.D. Cal. 2008), cited by Gateway, the court found that the arbitration fees were not unconscionable *because* the provision provided "that: 'Under no circumstances shall [Plaintiff] be required to pay more than ... she would be required to pay to initiate a lawsuit in the state or federal court.'" *Id.* at 1022.  Therefore, under *Ting* and *Armendarez,* and even under Gateway's authority, the arbitration provision at issue here is unconscionable because it would force Plaintiff and other consumers to pay more in arbitration fees than they would pay to file their claims in court.

The DRP is also unconscionable because it displays a fatal lack of mutuality, as it gives GW rights and protections denied the consumer.  "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638,

652 (2004) (quoting *Little,* 29 Cal.4th at 1071).  The paramount consideration in "assessing conscionability is mutuality." *Abramson*, 115 Cal.App.4th at 657.

The purported Gateway agreement provides that:  "This Agreement may not be modified, altered or amended without the written agreement of Gateway.  Any additional or altered terms shall be null and void, unless expressly agreed to in writing by Gateway."  Hogan Dec., Ex. 1 ¶ 8.  No similar right or protection is given the consumer.  Gateway, the drafter of the contract, could easily have made the necessity of a written agreement to any modification mutual, protecting both parties, but obviously chose not to do so.  In an analogous situation, in *Net Global Marketing,* 217 Fed. Appx. at 602, the Ninth Circuit found an agreement with a one-sided modification clause unconscionable.  *Id.*

"In determining whether an arbitration agreement is sufficiently bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting*, 319 F.3d at 1149; *see Acorn v. Household Int'l, Inc.,* 211 F.Supp.2d 1160, 1172 (N.D.Cal. 2002).  Here, given the ambiguity and brevity of Gateway's DRP, its reliance on the unavailable NAF forum, and its lack of procedural guidance, the practical reality is that the Parties would need to negotiate modifications and reach agreement on many things including the arbitral forum itself.  GW, able to bind the consumer based on the consumer's purported oral statements, but itself bound only by its written statements, would have a decided advantage.

Finally, the DRP is substantively unconscionable because, as conceded by GW, it imposes confidentiality under the NAF rules (and presumably any other arbitral forum to which Gateway would consent).  The cases cited by Gateway merely illustrate that the requirement of confidentiality does not always *per se*

20

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

render an arbitration provision unconscionable.  But as the Ninth Circuit found in *Ting*, attempts to make consumer arbitration proceedings confidential are void as an unconscionable violation of public policy. That is because "confidentiality provisions usually favor companies over individuals," and fairness requires openness so that consumer claimants will have access to the same body of knowledge and precedent that the "repeat player" corporation gains from multiple arbitrations against its own customers.  *Ting*, 319 F.3d at 1151-52.

C.   **Unlike the Supreme Court's Assumption in *Concepcion*, Compelling Arbitration Here Would Prevent Plaintiff From Vindicating His Statutory Rights**

Under Supreme Court precedent left untouched by *Concepcion,* arbitration cannot be compelled because the practical effect would be to deny Plaintiff the ability to vindicate his statutory rights under the CLRA, the FAL and the UCL.[16] As stated above, the Supreme Court has consistently held that statutory claims are arbitrable "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum" and that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only

---

[16] Gateway is wrong that an arbitration provision may deprive consumers of substantive rights that they would possess in court. Gateway's reliance on *Monex Deposit Co. v. Gilliam,* 671 F. Supp. 2d 1137 (C. Dist. Cal. 2009), is misplaced. *Gilliam* was an individual case that concerned a $100,000 investment account, and it has no applicability to the situation here.  *Id.* at 1146-1147.  Furthermore, in *Hartley v. Superior Court,* 2011 WL 2535582, (Cal. App. 4 Dist. June 28, 2011), a similar case concerning a lost $400,000 investment, the Court of Appeals rejected Monex' arguments based on the *Gilliam* ruling concerning the same arbitration provision, and remanded the case to the superior court to determine whether the provision was unconscionable.  *Id.*

21

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

1  submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi,*

2  473 U.S. at 628; *see also Gilmer,* 500 U.S. at 26.

3         Plaintiff is aware that the *Arellano* court ruled that *Concepcion* required that

4  arbitration be compelled even if it meant a plaintiff facing disproportionate

5  litigation costs must "forego substantive rights afforded by statute." *Arellano the*

6  *T-Mobile,* 2011 WL 1842712, at *2 (N.D. Cal. May 16, 2011).  Plaintiff

7  respectfully argues that such a conclusion was mistaken.  There can be no question

8  that *Randolph*, *Mitsubishi Motors* and *Gilmer* remain good law after *Concepcion*;

9  indeed, Justice Scalia relied on both *Mitsubishi Motors* and *Gilmer* in the

10 *Concepcion* decision.[17]  *Id.*, 131 S. Ct. at 1762.   In reaching its decision in

11 *Concepcion,* the Supreme Court assumed, based on the findings below, that the

12 individual claims of the plaintiffs and class members could be arbitrated effectively

13 and were "most unlikely to go unresolved." *Concepcion*, 131 S. Ct. at 1753

14 (emphasis added).  As the *Concepcion* court stated, "[AT&T's] arbitration

15 agreement provides that AT&T will pay claimants a minimum of $7,500 and twice

16 their attorney's fees if they obtain an arbitration award greater than AT&T's last

17 settlement offer. . . .  The Ninth Circuit admitted that aggrieved customers who

18
19
20
21
22

[17] Absent the Supreme Court's express repudiation, precedents remain controlling
authority.  *See Agostini v. Felton,* 521 U.S. 203, 237 (1997) (lower courts may not
"conclude our more recent cases have, by implication, overruled an earlier
precedent" and must "leav[e] to this Court the prerogative of overruling its own
decisions"); *see also Shalala v. Ill. Council on Long Term Care,* 529 U.S. 1, 18
(2000) ("This Court does not normally overturn, or so dramatically limit, earlier
authority *sub silentio*.").

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

filed claims would be 'essentially guarantee[d]' to be made whole[.]" *Id.* (citations omitted).   Thus, *Concepcion* did not reach the issue here.[18]

The record here, unlike that in *Concepcion,* shows that if arbitration is compelled, Plaintiff's claims are almost certain to go unresolved.  Given the DRP's complex nature, which is not consumer-friendly, individual damages are outweighed by the cost of arbitration.  A consumer would likely be unable to find an attorney to take the case on contingency and would be unable himself to afford or justify the substantial costs, including for research, investigation, and expert analysis required to prepare the case for arbitration.[19]  Lima Decl., ¶ 10; Rivas

---

[18] As it stated, the sole question before the Court in *Concepcion* was "whether §2 preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable. We refer to this rule as the Discover Bank rule." *Id.*, 131 S. Ct. at 1746.  The Supreme Court's dicta to the effect that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons," *Concepcion,* 131 S. Ct. at 1753, merely states a truism.  Here, there is no procedure inconsistent with the FAA.

[19] A risk versus benefit analysis would prevent an attorney from fronting the costs and taking the case on contingency.  GW will only reimburse consumers for any fees paid to NAF in connection with the arbitration if the consumer prevails.  Rivas Decl., Exh. A at 11 (¶ 16).  And under the DRP's terms, GW will not pay any arbitration fees to an alternative arbitration forum even if Plaintiff prevails.  This creates the enormous risk that Plaintiff will not recover any arbitration fees or attorney or expert fees or cots, given the arbitration provision's silence regarding attorneys fees and costs.  Because the DRP does not contain a provision entitling Plaintiff to a recovery of reasonable attorneys' fees and costs should he prevail, many attorneys will not incur the risk of this claim.

As explained in the accompanying declaration of consumer attorney Sheri L. Kelly, an attorney would not take the arbitration case here on contingency because of, among other things: the costs of bringing the case, including attorney time and

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Decl., Exh. A at 9 (¶ 10) and at 11 (¶ 17).   The expert costs alone to prove the Monitor's inherent defects cost anywhere from $ 5,800 to $11,200, as opined by expert Mark Keith.  Rivas Decl., Exh. B at 21 (¶ 11).

Nor is it a practical for Plaintiff to bring the case alone.  Plaintiff would not be able to pay the retainer demanded by an attorney or to an expert; and would not, in any case, find the likelihood of gaining back the attorney fees and costs expended plus his modest damages to be worth the risk of losing the entire expended amount if the case resulted in failure.  Lima Decl. at ¶ 9-11.  The fact that no consumers have filed claims with AAA and JAMS against GW supports the conclusion that the arbitration clause would prevent Plaintiff from vindicating his statutory rights.   Rivas Decl., ¶¶ 14-15.  In 2005 and 2006, Gateway sold over 9.4 million products and thus has millions of customers, yet no consumers have initiated arbitration with AAA or JAMS.  Rivas Decl., Exh. E at 43.[20]

### D.    The DRP Would Eliminate Public Injunctions by Private AGs

Additionally, enforcement of the DRP would deny Plaintiff his statutory right to seek injunctive relief on behalf of California residents under the CLRA, FAL and UCL.  As the Supreme Court has held, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial forum."

---

necessary expert fees, when compared to the damages likely to be awarded in the case.  *See* Rivas Decl., Exh. A at 11 (¶¶ 16-17).

[20] Plaintiff propounded arbitration related discovery on Gateway in June 2011.  GW produced information related to NAF arbitrations to Plaintiff but designated it confidential obviously because the information is unfavorable to GW.  Although Plaintiff disagrees that the information is confidential, Plaintiff has provided them to the Court under seal.

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

*Gilmer,* 500 U.S. at 32*; see also In re American Express Merchants' Litig.,* 634 F.3d at 196.

Plaintiff brings CLRA and the UCL claims by which he seeks to permanently enjoin GW's unlawful and deceptive advertising with respect to all consumers. *Id.* California courts recognize that a private citizen may bring actions under the UCL to benefit the public. *See Cruz v. PacifiCare Health Systems, Inc.,* 30 Cal. 4th 303, 316 (2003). As found in *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066 (1999), when a plaintiff sues under the CLRA seeking an injunction to benefit the public, that person "is functioning as a private attorney general . . ." *Id.* at 1079. Further, rights under the CLRA are unwaivable: "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." Cal. Civ. Code § 1751.[21] As held in *Gutierrez v. Autowest, Inc.,* 114 Cal. App. 4th 77, 94-95 (2003), the CLRA was "enacted for a public purpose and provides certain unwaivable rights." *Concepcion* does not displace the longstanding rule that a private action brought pursuant to a statute for a public right is not preempted by the FAA. *Brown v. Ralphs Grocery Co.,* No. B222689, 2011 WL 2685959, at *5 (Cal. Ct. App., July 12, 2011).

## IV.   **CONCLUSION**

Plaintiff respectfully requests that the Court deny GW's motion.

DATED: July 15, 2011                            Respectfully submitted,

                                                **FINKELSTEIN THOMPSON LLP**

---

[21] As noted by the court in *Cruz*, the United States Supreme Court has never directly decided the issue of State-mandated private attorney general action as it might limit the enforcement of arbitration agreements. *See Cruz,* 30 Cal. 4th at 313. Nor was that issue reached by the Supreme Court in *Concepcion.*

25

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)

By: /s/ Rosemary M. Rivas
Rosemary M. Rivas

Mark Punzalan
Danielle A. Stoumbos
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Gordon M. Fauth, Jr.
**LITIGATION LAW GROUP**
1801 Clement Avenue, Suite 101
Alameda, California 94501
Telephone (510) 238-9610
Facsimile (510) 337-1431

*Counsel for Individual and Representative
Plaintiff Genevieve Meyer*

MEMO OF P&A IN OPPOSITION TO GATEWAY'S MTC ARBITRATION
SACV09-01366 DMG (MLGx)