Rosemary M. Rivas (Cal. Bar No. 209147)
Email: rrivas@finkelsteinthompson.com
Danielle A. Stoumbos (Cal. Bar. No. 264784)
dstoumbos@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Telephone (415) 398-8700/Facsimile (415) 398-8704

Gordon M. Fauth, Jr. (Cal. Bar No. 190280)
Email: gmf@classlitigation.com
Alexis A. Phocas (Cal. Bar No. 194481)
Email: aap@classlitigation.com
**LITIGATION LAW GROUP**
1801 Clement Avenue, Suite 101
Alameda, California 94501
Telephone (510) 238-9610/Facsimile (510) 337-1431

*Attorneys for Individual and Representative Plaintiff Mark D. Lima*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK D. LIMA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GATEWAY, INC.,<br><br>Defendant. | Case No. SACV09-01366 DMG (MLGx)<br><br>Assigned for all purposes to Hon. Dolly M. Gee<br><br>**PLAINTIFF'S SECOND SUPPLEMENTAL BRIEF IN OPPOSITION TO GATEWAY, INC'S MOTION TO COMPEL ARBITRATION CONCERNING APPLICABILITY OF *KOLEV* DECISION**<br><br>Complaint Filed:   November 23, 2009<br>FACC Filed:        January 22, 2010 |

GATEWAY, INC., a Delaware
corporation,

                    Third-Party Plaintiff,

        v.

TOP VICTORY INVESTMENTS
LIMITED, a Hong Kong corporation,

                    Third-Party Defendant.

On September 28, 2011, the Court ordered additional briefing regarding the applicability of *Kolev v. Euromotors West/The Auto Gallery*, __ F.3d __, 2011 WL 4359905 (9th Cir. Sept. 20, 2011), to Defendant's June 17, 2011 motion to compel arbitration.

## I.   *KOLEV'S* APPLICABILITY

### A.   The Ninth Circuit Reaffirms That Courts Must First Answer the Question of Whether a Valid Arbitration Agreement Exists

The Ninth Circuit reaffirms the basic principle that "[t]he FAA provides in pertinent part that an arbitration agreement 'shall be valid, irrevocable, and enforceable, save upon such ground as exist at law or in equity for the revocation of any contract." *Id.* at *4, citing 9 U.S.C. § 2. The question is the same in *Kolev* as before this Court: whether there exists a valid agreement to arbitrate. The fact that the analyses differ is immaterial.[1]

The outcome under the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, for Plaintiff Kolev is the same for Plaintiff Lima under application of traditional principles of contract formation within the rubric of the FAA: neither is bound by the arbitration provisions in the warranties at issue. Plaintiff Kolev is not bound based on the plain language of the MMWA as reasonably interpreted by the Federal Trade Commission ("FTC"). Plaintiff Lima is not bound because of the lack of plain oral language informing him of the

---

[1] The Ninth Circuit follows *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) which instructs courts to "use traditional tools of statutory construction [of the Magnuson-Moss Warranty Act] to determine whether Congress expressed a clear intent on the issue in question [of whether the FTC's interpretation of the MMWA as precluding pre-dispute mandatory binding arbitration is reasonable]." *Kolev,* 2011 WL 4359905, at *2.

1

P'S SECOND SUPP. BRIEF IN OPP. TO D'S MTC ARB.
SACV09-01366 DMG (MLGx)

1   arbitration provision's existence during the phone call he made to order a monitor.[2]

2   **B.   _Kolev_ Is Applicable By Analogy In Its Holding that the 1924 FAA**
3   **Does Not Preempt the 1975 MMWA**

4       Importantly, in _Kolev_, the Ninth Circuit rejected the argument that the FTC's

5   construction of the MMWA "is unreasonable in light of the Supreme Court's

6   repeated holdings that Congress established a 'liberal federal policy favoring

7   arbitration agreements' when in 1924 it enacted the Federal Arbitration Act (FAA),

8   fifty-one years before adopting the Magnuson-Moss Warranty Act in 1975."

9   _Kolev_, 2011 WL 4359905, at *4, _citing Moses H. Cone Mem'l Hosp. v. Mercury_

10  _Constr. Corp._, 460 U.S. 1, 24 (1983);   _Hall Street Assoc. v. Mattel, Inc._ 552 U.S.

11  576, 581 (2008) and _Buckeye Check Cashing Inc. v. Cardegna_, 546 U.S. 440, 443

12  (2006).   The Ninth Circuit agreed that it would be unprecedented to locate

13  Congressional intent with respect to one statute [the MMWA] by looking to a

14  prior, less specific statute [the FAA] based on two basic principles of statutory

15  interpretation – first, that later enacted statutes take priority over older ones, and

16  second, that more specific statues control more general ones.   _Kolev_, 2011 WL

17  4359905, at *5.   The Ninth Circuit also held that it was bound under _Chevron_ by

18  the FTC's reasonable interpretation of the MMWA as barring pre-dispute

19  mandatory binding arbitration, which was not overridden by the FAA's

20  proarbitration presumption. _Id._

21      _Kolev_ rejects putting the MMWA in a post-FAA historical place.   By

---

[2] The evidence shows that when Lima placed his telephone order, he was not told
that he waived any rights to a jury trial or to participate in a class action. _See_ Lima
Decl., filed July 15, 2011, Docket No. 59, Attachment 8, ¶¶ 3-5.  Plaintiff's
position is that the contract was formed by the telephone order.

analogy here, the FAA is not intended to wipe clean hundreds of years of history in the development of contract formation analysis in favor of one statute, the FAA, which contains a proarbitration presumption.  As District Judge Pregerson recently stated in denying a motion to compel arbitration in a putative class action:

> Our legal institutions depend on legitimate process and the real possibility for redress.  Federal policy strongly encourages arbitration that is 'prompt, economical and *adequate.'* [emphasis in original; citations omitted]. . . . [Defendant] Ralphs' [Grocery Store's] arbitration policy lacks any semblance of fairness and eviscerates the right to seek civil redress, rendering it a right that exists in name only.  To condone such a policy would be a disservice to the legitimate practice of arbitration and a stain on the credibility of our system of justice.

*Chavarria v. Ralphs Grocer Co.*, ___ F.2d __, 2011 WL 4104856, at *8 (C.D. Cal. Sept. 15, 2011).  Agreements to arbitrate are still, and always will be, a matter of contract; a favored form of contract as a matter of public policy with the FAA, true, but nonetheless subject to the same contract formation analysis as any other contract.  *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011), affirmed the oft-stated "fundamental principle that arbitration is a matter of contract," that "courts must place arbitration agreements on an equal footing with other contracts" and "enforce them according to their terms." *Id.* at 1745-46 (*internal citations omitted*).

California District Courts have found post-*Concepcion* that "[t]he determination of the validity of an arbitration clause, which may be made only 'upon such grounds as exist for the revocation of any contract,' is solely a judicial function." *Chavarria*, 2011 WL 4104856, at *4, *citing Stirlen v. Supercuts, Inc.,* 51 Cal. App. 4th 1519, 1527 (1997).  Other California District Courts are in accord.

3

"Even in the wake of the decision in *Concepcion,* 'arbitration agreements are still subject to unconscionability analysis.'" *See Newton v. Clearwire Corp.*, ___ F.2d ___, 2011 WL 4458971, at *4 (E.D. Cal. Sept. 23, 2011), *citing Kanbar v. O'Melveny & Myers*, ___F. Supp. 2d ___, 2011 WL 2940690, at *6 (N.D. Cal. July 21, 2011).

*Kolev* lends credence to Plaintiff's argument that Gateway's purported arbitration agreement cannot simply be encased in a 1924 statute without historical regard to foundational principles of contract formation pre-dating 1924[3] nor the eighty-seven years of contract formation law since developed.

## C.   Plaintiff's Unconscionability Arguments Survive *Kolev*

Since the Ninth Circuit found that the FTC's construction of the MMWA is reasonable in *Kolev*, it did "not address additional contentions that the arbitration clause was unconscionable under California law ...." *Kolev*, 2011 WL 4359905, at *7. Nevertheless, as *Kolev* makes clear, unconscionability is a ground for invaliding an arbitration clause.

Plaintiff has provided a number of grounds for denying Gateway's motion to

---

[3] As stated in the classic text *Contracts*, "[f]or centuries, philosophers of law have attempted to explain why the legal system recognizes and enforces private agreements." CALAMARI & PERILLO, CONTRACTS §§1-6 at p. 13 (3d ed. West Publ. 1987), *citing* KANT, THE PHILOSOPHY OF LAW 134-144 (Albrecht trans. 1921); Paul Vinogradoff, *Reason & Conscience in 16th Century Jurisprudence*, 24 L.Q. REV. 373 (1908). Williston's *Restatement of Contracts*, published in 1932 by the American Law Institute, § 13 at p. 14 cites to § 182 of *Jenks' Digest of English Civil Law*, published in 1901 in London, for the notion that "a contract is defined as including any agreement where the parties *intended* to create a legal obligation" (italics in original).  Jenks, of course, in turn relied upon many prior centuries of English common law.

compel.  First and foremost, Plaintiff has shown that no agreement to arbitrate exists.  *See* Docket No. 78.  Additionally, Plaintiff has shown that Gateway waived its right to compel arbitration and that the specific designation of the National Arbitration Forum to "resolve[] exclusively and finally" is now unenforceable.

Moreover, Gateway's DRP is procedurally and substantively unconscionable on a number of levels.  The DRP was buried in a contract of adhesion, with no consent from Plaintiff, on a "take it or leave it basis."  Further, Gateway's DRP is substantively unconscionable in requiring consumers to bear far more costs than they would bear if they proceeded in small claims court and forces consumers to bear all costs of arbitration.  The DRP also evidences a lack of mutuality in providing Gateway unilateral power to modify the agreement without the consumer's mutual consent to modification.  Finally, Gateway's confidentiality clause and forced waiver of statutory rights are similarly unconscionable.

If the Court disagrees and grants Gateway's motion, Plaintiff will seek leave to assert breach of warranty and MMWA claims.  *See Estrella v. Freedom Fin. Network, LLC*, No. 09-3153, 2011 WL 4595017, at *2 (N.D. Cal. Oct. 3, 2011) (after granting motion to compel arbitration, court permitted amendment of complaint to add plaintiffs not subject to arbitration clause).[4]

_____

[4] At least one court found that an arbitration clause in a consumer warranty agreement was *per se* invalid under the MMWA regardless of whether the Plaintiff alleged a claim under the MMWA, holding that arbitration provisions in written warranty agreements requiring arbitration of "any and all disputes" triggers the MMWA and renders the mandatory arbitration provision unenforceable. *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 32–33 (2007) (*citing* 16 C.F.R. § 703.5(j)). Because Gateway's DRP applies to "any Dispute," the arbitration provision in Gateway's DRP is likewise unenforceable under the MMWA.

P'S SECOND SUPP. BRIEF IN OPP. TO D'S MTC ARB.
SACV09-01366 DMG (MLGx)

1  DATED: October 12, 2011

Respectfully submitted,

2  **FINKELSTEIN THOMPSON LLP**

3

4  By: /s/ Rosemary M. Rivas
        Rosemary M. Rivas

5

6  Mark Punzalan

7  Danielle A. Stoumbos
   100 Bush Street, Suite 1450

8  San Francisco, California 94104
   Telephone: (415) 398-8700

9  Facsimile: (415) 398-8704

10

11  Gordon M. Fauth, Jr.
    Alexis Phocas

12  **LITIGATION LAW GROUP**
    1801 Clement Avenue, Suite 101

13  Alameda, California  94501
    Telephone (510) 238-9610

14  Facsimile (510) 337-1431

15

16  *Counsel for Individual and Representative*
    *Plaintiff Mark D. Lima*

17

18

19

20

21

22

23

24

25

26

27

28

6