1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11    MARK D. LIMA, on behalf of himself and all others similarly situated, | Case No. SACV 09-01366 DMG (MLGx) |
| 13                Plaintiff, | **ORDER RE DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| 14        v. | |
| 15    GATEWAY, INC., | |
| 16                Defendant. | |
| 17    GATEWAY, INC., | |
| 18            Third-Party Plaintiff, | |
| 19        v. | |
| 20    TOP VICTORY INVESTMENTS LIMITED, | |
| 22           Third-Party Defendant. | |

23
24
25
26
27
28

       This matter is before the Court on Defendant Gateway, Inc.'s motion to compel arbitration [Doc. # 55]. At issue is whether the arbitration clause is enforceable in light of *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). For the reasons set forth below, the Court concludes that the arbitration

provisions are procedurally and substantively unconscionable and therefore unenforceable.  Accordingly, Gateway's motion is DENIED.

## I.

## FACTUAL BACKGROUND

In March 2008, Gateway offered the XHD 3000 30" LCD Flat-Panel Display for a total purchase price of $1,638.75.  (Hogan Supp. Br. Decl. [Doc. # 77-1] ¶ 5.)  Plaintiff Mark D. Lima purchased an XHD 3000 monitor by telephone on March 28, 2008.  (*Id.* ¶ 9; Lima Decl. [Doc. # 59-8] ¶ 3.)  Although Lima does not recall Gateway mentioning during this call that he was waiving any rights to a jury trial or to participate in a class action (Lima Decl. ¶ 3), Gateway had procedures in place at the time requiring its phone sales representatives to disclose to customers that Gateway's "One Year Limited Warranty Agreement" ("Limited Warranty") applied to their purchase, a copy of which would ship with the product.[1]  (Brinkerhoff Decl. [Doc. # 77-2] ¶ 8.)  Gateway apparently did not have a policy of disclosing during phone sales that its separate "Standard Terms of Sale" agreement ("Terms Agreement") would also apply,[2] and the Limited Warranty does not incorporate the Terms Agreement by reference.[3]

Before purchasing the monitor, Lima researched the XHD 3000's specifications and capabilities by visiting Gateway's website.  (1st Am. Compl. ¶ 27 [Doc. # 7].)  At the

---

[1] Despite this policy, Lima does not recall that Gateway told *him* about the Limited Warranty. (Lima Supp. Decl. ¶ 2 [Doc. # 94].)  Because this is a class action and it is undisputed that Gateway had a general policy of disclosing the warranty during phone sales, the Court assumes for the purpose of resolving Gateway's motion that Gateway disclosed to Lima that the Limited Warranty would apply to his purchase.

[2] The Court noted that the record contained no evidence of such a policy and requested further briefing from the parties on the issue.  (Order Regarding Gap in Factual Record [Doc. # 90].)  In its response, Gateway did not claim to have had such a policy and, in fact, suggested the opposite.  (*See* Def.'s Submission of Joint Report at 4 ("[T]he fact that Gateway may not have undertaken the same 'belt and suspenders' approach with regard to the Terms and Conditions [agreement] as it did with the Limited Warranty does not change [its enforceability].") [Doc. # 91].)

[3] The Terms Agreement, in contrast, *does* incorporate the Limited Warranty by reference.  (*See* Hogan 2nd Supp. Br., Ex. A at 2 [Doc. # 83-1].)

time, Gateway's website listed the monitor's specifications with a disclaimer at the bottom stating that the sale was "subject to Limited Warranty and Terms & Conditions agreement."  (Hogan Supp. Br. Decl. ¶¶ 7-8, Ex. A.)  The term "agreement" was hyperlinked so that by clicking on it a consumer could view Gateway's Limited Warranty and Terms Agreement.  (*Id.*)

Gateway mails sales receipts to customers who make their purchases online or by telephone before shipping their products.  Lima's sales receipt was mailed on March 29, 2008.  (Hogan Supp. Br. Decl. ¶ 16.)  It states that the sale was "made under Gateway's Terms & Conditions of Sale unless you entered into a separate written agreement with Gateway."  (Lima Decl., Ex. A at 2.)  All of Gateway's sales receipts reference the Limited Warranty and invite the customer to visit Gateway.com or call Gateway toll-free to obtain a copy of it.  (*Id.*; Hogan Supp. Br. Decl. ¶ 15.)

On April 3, 2008, Gateway shipped Lima's monitor to him via UPS standard ground delivery.  (Hogan Supp. Br. Decl. ¶ 16.)  Lima recalls receiving the sales receipt in the mail after his purchase and receiving the monitor several weeks after his purchase.  (Lima Decl. ¶¶ 4-5.)  Along with the monitor, inside a bag with power cables, instruction manuals, and other miscellaneous accessories necessary for the monitor's operation, Gateway included a copy of both the Limited Warranty and the Terms Agreement, each of which contained an identical arbitration provision.  (Hogan Decl. [Doc. # 55-1], Ex. 1 ¶ 7; Hogan Supp. Br. Decl. ¶¶ 9-10, 13-14; Hogan 2nd Supp. Br. Decl. ¶ 2, Ex. A at 3.)

On May 7, 2008, Lima contacted Gateway's customer service department.  (Hogan Supp. Decl. [Doc. # 69] ¶ 8; Hogan Supp. Br. Decl. ¶ 18.)  Although Lima had not reviewed the Limited Warranty, he believed that his monitor may have been covered under some sort of warranty.  (Lima Decl. ¶ 6.)  After Lima described the problem that he was experiencing with his monitor, Gateway's customer service representative determined that the monitor was in "theft deterrent mode" and instructed Lima on how to take the monitor out of that mode.  Gateway provided this assistance under the Limited Warranty.  (Hogan Supp. Decl. ¶ 8; Hogan Supp. Br. Decl. ¶ 18.)

In mid-2009, after experiencing repeated problems with his monitor, Lima called Gateway's customer service department.  Gateway refused to repair the monitor, stating that it was outside of the warranty period.  Gateway offered to sell Lima a $200 Acer monitor as a replacement, but Lima declined this offer.  (Lima Decl. ¶ 6; Bauer Decl. [Doc. #69-1] ¶¶ 2-4, Exs. 1, 2, 3.)  This lawsuit followed.

## II.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides that written provisions to arbitrate disputes are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Concepcion*, 131 S.Ct. at 1744 (quoting 9 U.S.C. § 2) (internal quotation marks omitted).  This provision reflects "both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'"  *Id*. at 1745 (quoting *Rent-A-Center, West, Inc. v. Jackson*, __ U.S. __, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (internal quotation marks omitted).

As long as an arbitration clause is not itself invalid under "generally applicable contract defenses, such as fraud, duress, or unconscionability," *id*. at 1746 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)) (internal quotation marks omitted) (citing *Perry v. Thomas*, 482 U.S. 483, 492-93 n.9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)), it must be enforced according to its terms, *id*. at 1745 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).  *See also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (citing 9 U.S.C. §§ 3, 4)).  Thus, this Court's role under the FAA is "limited to determining (1) whether a valid agreement to

arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (internal quotation mark omitted)).

## III.

## DISCUSSION

## A.   Gateway Did Not Waive Its Right To Compel Arbitration

As a preliminary matter, Lima contends that Gateway waived any right to enforce the arbitration provision through its conduct in this case.  (Opp'n at 7-10 [Doc. # 59].) Assuming, without deciding, that the Court is empowered to decide this question,[4] the Court agrees with Gateway that it has not waived its rights.  *See Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393-94 (6th Cir. 2008); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217-19 (3d Cir. 2007); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 12-14 (1st Cir. 2005).

Although the right to arbitration—like other contractual rights—can be waived, waiver is disfavored and "any party arguing waiver of arbitration bears a heavy burden of proof."  *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988)). "To demonstrate waiver of the right to arbitrate, a party must show:  '(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.'"  *Id*. (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

---

[4] It is not settled law in the Ninth Circuit whether the issue of waiver should be decided by the court or by the arbitrator.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 838 F. Supp. 2d 967, 974-75, (C.D. Cal. 2012).   Neither party challenges the propriety of the Court's consideration of the waiver issue.

Lima's waiver argument fails at the first step.  Gateway had no right to compel arbitration prior to April 27, 2011—the date that *Concepcion* was decided—because California law previously held that class-action waiver provisions in certain consumer contracts of adhesion are unconscionable.  *Concepcion*, 131 S.Ct. at 1746 (citing *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162, 30 Cal. Rptr. 3d 76 (2005)).  While Lima is correct that *Discover Bank* did not dictate a *per se* rule against class-action waivers, *see Discover Bank*, 36 Cal. 4th at 162 ("We do not hold that all class action waivers are necessarily unconscionable."), it *did* announce a general rule that class action waivers are unconscionable when "found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money."  *Id*. at 162-63.

That is precisely the situation here.  Lima seeks damages on behalf of a class based on allegations that Gateway intentionally concealed defects in its monitors so as to convince individual consumers to purchase them for $1,638.75.  Gateway's limited warranty agreement is fairly described as a contract of adhesion because it is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 108, 134 Cal. Rptr. 3d 622 (2011) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113, 99 Cal. Rptr. 2d 745 (2000)) (internal quotation mark omitted).  Thus, Gateway could not have compelled arbitration until *Concepcion* invalidated the *Discover Bank* rule on April 27, 2011.

On May 10, 2011—less than two weeks after the *Concepcion* decision—the parties filed a stipulation indicating that Gateway intended to file a motion to compel arbitration [Doc. # 50], whereupon the Court established a briefing schedule [Doc. # 53].  Lima fails to identify any conduct by Gateway between the *Concepcion* decision and Gateway's

filing of its motion to compel on June 17, 2011 that was inconsistent with Gateway's right to compel arbitration.  Therefore, Gateway did not waive any such right.

**B.      The Validity Of The Arbitration Clause**

Sales contracts such as the one at issue here for a computer monitor are governed by the California Commercial Code.[5]  *See* Cal. Com. Code §§ 2102, 2105.  "A contract for the sale of goods may be made 'in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.'" *C9 Ventures v. SVC-West, L.P.*, 202 Cal. App. 4th 1483, 1492, 136 Cal. Rptr. 3d 550 (2012) (quoting Cal. Com. Code § 2204(1)).  In general, "[a]n offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances."  Cal. Com. Code § 2206(1)(a).  An oral contract may be sufficiently definite despite leaving open various terms "if the parties intended to make a contract and there is a reasonably certain basis for providing an appropriate remedy."  *C9 Ventures*, 202 Cal. App. 4th at 1493 (citing Cal. Com. Code § 2204(3)).

**1.      Lima Assented To The Limited Warranty**

Regardless of which party was the offeror and which party was the offeree, it is clear that the parties reached an agreement for the sale of a computer monitor when Lima contacted Gateway by telephone and ordered the monitor and Gateway accepted Lima's credit card payment.  Gateway contends that, as part of this sales transaction, Lima

---

[5] The Limited Warranty states that it "and any sales there under [sic]" are governed by South Dakota law.  (Hogan Decl., Ex. 1 at 2.)  The Terms Agreement "incorporates the Gateway Limited Warranty agreement by reference."  (Hogan 2nd Supp. Br. Decl., Ex. A at 2 (emphasis omitted).)  Notwithstanding this choice-of-law provision, both parties have proceeded on the implicit assumption that California law governs.  Through this clear course of conduct, they have waived any right to the application of South Dakota law.  *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006) (*en banc*).  In any event, the choice of law is not dispositive.  As discussed below, the Court finds that Lima's assent to the arbitration provision in the Limited Warranty and Terms Agreement turns on whether he knew about these documents at the time of purchase.  Application of South Dakota law would produce the same result.  *See Terminal Grain Corp. v. Rozell*, 272 N.W.2d 800 (S.D. 1978) (holding that assent could not be manifested through silence absent evidence that the seller had given the buyer advance notice that the buyer's silence would constitute assent and that the buyer so understood).

-7-

accepted the terms of its Limited Warranty by (1) purchasing his monitor after being told on the phone that the sale was subject to the Limited Warranty; (2) keeping the monitor after the expiration of the cancellation period; and (3) availing himself of the benefits of the Limited Warranty.  (Def.'s Supp. Br. at 1 [Doc. # 77].)  Because the Court agrees with Gateway's first two contentions, it need not address the third.

Gateway relies directly or indirectly on three appellate decisions—*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), and *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996)—for the proposition that "when one purchases a product and is aware that other terms and conditions govern that purchase, he or she is bound by those terms as soon as the purchase is complete" even though the purchaser does not receive a copy of those additional terms until a later date.[6]  (Def.'s Supp. Br. at 2-3.)  Indeed, in many consumer transactions it would be impractical if not impossible for a telephone sales representative to disclose to a customer all of the terms and conditions of the sale.

> If the staff at the other end of the phone for direct-sales operations such as Gateway's had to read the four-page statement of terms before taking the buyer's credit card number, the droning voice would anesthetize rather than enlighten many potential buyers.  Others would hang up in a rage over the waste of their time.  And oral recitation would not avoid customers' assertions (whether true or feigned) that the clerk did not read term X to them, or that they did not remember or understand it.  Writing provides benefits for both sides of commercial transactions.  Customers as a group are better off when vendors skip costly and ineffectual steps such as telephonic recitation, and use instead a simple approve-or-return device.

---

[6] *Shute* was an admiralty case that involved federal common law.  *See* 499 U.S. at 590.  While both *Hill* and *ProCD* applied the Uniform Commercial Code, these Seventh Circuit decisions are obviously not binding on a district court in the Ninth Circuit.  This Court nonetheless considers these three cases for their persuasive value given the lack of precedential cases to squarely confront this issue. *Hill* in particular concerns a nearly identical factual situation involving the same defendant.

-8-

1  *Hill*, 105 F.3d at 1149.

2      Thus, it suffices to inform the consumer at the time of purchase that a sale is

3  subject to additional terms that will be disclosed later.  In *Shute*, where the defendant

4  cruise line sent the plaintiffs notice of additional terms printed on their cruise tickets,

5  notice of these additional terms at the time of purchase was not at issue.  *See* 499 U.S. at

6  590.  In *ProCD*, a notice posted on the software box warned potential purchasers that the

7  software was subject to restrictions stated in an enclosed license.  86 F.3d at 1450.  The

8  *Hill* plaintiffs "knew before they ordered the computer that the carton would include

9  *some* important terms."  105 F.3d at 1150 (emphasis in original).

10      Here, Lima knew at the time of sale that his purchase was subject to Gateway's

11  Limited Warranty.  The warranty's terms were available on Gateway's website, which

12  Lima knew how to access.  The sales receipt—which Lima received before his product

13  was shipped—reminded him that the Limited Warranty applied and was available on

14  Gateway's website.  (Lima Decl., Ex. A.)  Finally, Gateway included the Limited

15  Warranty in the box containing the monitor that it shipped to Lima.  Whether or not Lima

16  actually read these additional terms, he assented to them.

17      Relying on *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440 (9th Cir.

18  1986), *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 101 Cal.

19  Rptr. 347 (1972), and *Commercial Factors Corp. v. Kurtzman Bros.*, 131 Cal. App. 2d

20  133 (1955), Lima maintains that the Limited Warranty's arbitration clause is a material

21  alteration to the purchase agreement that required but lacked his express assent.  (Pl.'s

22  Supp. Br. at 3-4 [Doc. # 78].)  Yet, Lima *did* assent to an arbitration clause when he

23  agreed to purchase the monitor subject to Gateway's Limited Warranty.  The Limited

24  Warranty prominently states in capital letters and bold font that it applies to Lima's

25  purchase unless within 15 days after receiving the warranty he notifies Gateway in

26  writing that he does not agree to it and returns his product.  (Hogan Decl., Ex. 1.)

27      The cases cited by Lima all involved counterfactual situations.  In *Windsor Mills*,

28  one merchant offered to purchase yarn from another merchant, and the selling merchant

responded with an "acknowledgment of order" form containing additional terms, including an arbitration provision.   Similarly, in *Diamond Fruit Growers* and *Commercial Factors*, the purchasing merchant had no notice of the seller's additional terms until it received an order acknowledgement form.   Here, Lima agreed to the Limited Warranty's terms at the time of sale, had the opportunity to read the Limited Warranty on Gateway's website, and ultimately had the opportunity to reject its terms and cancel the sale once he received a written copy.   He did not do so.   Thus, Lima assented to the Limited Warranty's terms.

### 2.   Lima Did Not Assent To The Terms Agreement

In contrast, Lima did *not* know about the Terms Agreement prior to his purchase. Gateway did not inform Lima about this agreement over the phone.   Although Lima visited the Gateway website (1st Am. Compl. ¶ 27), which contained a link to the Terms Agreement (Hogan Supp. Br. Decl. ¶ 8), there is no evidence that he saw it there.   Nor did he purchase his monitor online.   Consequently, the Terms Agreement merely constituted a proposal for additional terms.   *See* Cal. Com. Code § 2207.[7]   Because Lima did not manifest his assent to these terms, he cannot be bound by them.

Gateway maintains that Lima had constructive notice that the Terms Agreement would apply to his purchase because it was available via a hyperlink at the bottom of Gateway's product specifications webpage, which Lima had visited before his purchase. (Def.'s Submission of Joint Report at 2.)   Yet, in California, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious."   *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32-35 (2d Cir. 2002) (Sotomayor, J.) (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d

---

[7] Section 2207 provides that (1) "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms"; and (2) "[t]he additional terms are to be construed as proposals for addition to the contract."

987, 992, 101 Cal. Rptr. 347 (1972)) (internal quotation marks omitted).  "This principle of knowing consent applies with particular force to provisions for arbitration."  *Id*. (quoting *Windsor Mills*, 25 Cal. App. 3d at 993).

In *Specht*, the Second Circuit, applying California law, rejected a similar argument that a consumer was bound by an arbitration clause found in a terms and conditions agreement available via a link at the bottom of a webpage he had visited.  The Second Circuit held that "a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms."  *Id*. at 32.

Here, the facts offer even less support for a finding that Lima had constructive notice.  The consumer in *Specht* acquired the product at issue—software—by clicking on a link from the same web page that contained a link to the terms and conditions agreement further down.  Lima was not visiting Gateway's website to make his purchase but rather to conduct preliminary research about the monitor's features.  He was even less likely than the *Specht* plaintiff to notice that terms hidden via a hyperlink at the bottom of the web page might apply should he ultimately choose to acquire the product.

It is also of no moment that the Terms Agreement purports to apply to Lima's purchase unless, within 15 days of receiving it, he notifies Gateway in writing that he does not agree to it and returns his monitor under Gateway's return policy.  (Hogan 2nd Supp. Br. Decl., Ex. A at 2.)  "Ordinarily mere silence or inaction in the face of the offer of a contract cannot amount to an acceptance."  *Wold v. League of Cross of Archdiocese of San Francisco*, 114 Cal. App. 474, 479, 300 P. 57 (1931).  Silence or inactivity will constitute assent only "where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound."  *Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650, 655, 4 Cal. Rptr. 543 (1960) (citing *Wold*, 114 Cal. App. at 479).  Here, the parties had no previous interactions and Lima had no duty to respond.

*Hill* suggests in *dicta* that additional "shrinkwrap" terms might be incorporated into agreements for the sale of consumer goods even if such terms' existence is made known to the consumer for the first time when he or she opens the box after it is shipped. This *dicta* rested on the assumption that the costs of returning the product and cancelling the transaction would be negligible. *See* 105 F.3d at 1150. Here, they are not. The Terms Agreement warns purchasers that they may be charged a 15% restocking fee if they return a product (Hogan 2nd Supp. Br. Decl., Ex. A at 2), *i.e.*, approximately $245 in this case, which is not a negligible amount for the ordinary consumer. Thus, even if the *Hill dicta* is a correct statement of the law in California—which is doubtful—it is inapplicable here.

Lima did not have notice of the Terms Agreement—actual or constructive—until *after* the purchase when his receipt arrived in the mail. As a result, the Terms Agreement became a proposal for additional terms. Because Lima never manifested his assent to these additional terms, the arbitration clause in particular, they are not a part of his purchase agreement with Gateway.

**C.    The Arbitration Provision Encompasses The Dispute At Issue**

The Limited Warranty provides that "You and Gateway agree that any Dispute between you and Gateway will be resolved exclusively and finally by arbitration." (Hogan Decl., Ex. 1 at 2.)

> [T]he term "Dispute" means any dispute, controversy, or claim arising out of or relating to (i) this Agreement, its interpretation, or the breach, termination, applicability or validity thereof, (ii) the related order for, purchase, delivery, receipt or use of any Product or service from Gateway, or (iii) any other dispute arising out of or relating to the relationship between you and Gateway . . . .

(*Id.*) This sweeping language plainly encompasses the instant dispute. In fact, it is difficult to imagine *any* dispute between Lima and Gateway that would lie outside its bounds.

-12-

**D.    The Arbitration Clause Is Unenforceable**

    **1.    The National Arbitration Forum's Unavailability Does Not Render The Arbitration Provision Unenforceable**

    Lima's first line of attack against the arbitration clause's enforceability is that it designates a specific arbitration forum that is no longer available.  The arbitration clause provides in relevant part as follows:

> **Dispute Resolution.**  You and Gateway agree that any Dispute between you and Gateway will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules, except as otherwise provided below.  You and Gateway will agree on another arbitration forum if NAF ceases operations. . . .
>
>         *    *    *
>
>     Should either party bring a Dispute in a forum other than NAF, the arbitrator may award the other party its reasonable costs and expenses, including attorneys' fees, incurred in staying or dismissing such other proceedings or in otherwise enforcing compliance with this dispute resolution provision. . . .  Information may be obtained from the NAF on line at www.arbforum.com, by calling 800-474-2371 or writing to P.O. Box 50191, Minneapolis, MN, 55405.
>
>         *    *    *
>
> If any term of this Agreement is illegal or unenforceable, the legality and enforceability of the remaining provisions shall not be affected or impaired.

(Hogan Decl., Ex. 1 at 2.)

    Lima contends that use of the NAF—which ceased conducting consumer arbitrations in July 2009—is integral to the Limited Warranty and therefore the NAF's unavailability renders the arbitration provision unenforceable.  (Opp'n at 10-14.)  Despite the warranty's seemingly clear language providing for arbitration in alternative fora in the event NAF arbitration is unavailable, Lima maintains that the NAF has not "cease[d]

operations" because it has not ceased *all* operations.   Thus, according to Lima, the provision requiring him and Gateway to agree on another arbitration forum is inapplicable.   Not surprisingly, Lima identifies no courts that have accepted this hyper-technical argument.   *But see In re Gateway LX6810 Computer Prods. Litig.*, No. SACV 10–1563–JST (JEMx), 2011 WL 3099862, at *2, 2011 U.S. Dist. LEXIS 84402, at *4-6 (C.D. Cal. July 21, 2011) (Tucker, J.) (rejecting the argument).

The Limited Warranty does not require the NAF to cease all operations in order to trigger the alternative forum requirement.   As Lima concedes, the NAF has ceased its operations that are relevant to the Limited Warranty, *i.e.*, arbitrating disputes between companies and private individuals.   The parties' inability to arbitrate in the NAF specifically has no bearing on this dispute's arbitrability generally.

### 2.   The Arbitration Provision Is Unconscionable

"Unconscionability under California law 'has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'"   *Kilgore*, 6734 F.3d at 963 (quoting *Armendariz*, 24 Cal. 4th at 114).   In analyzing these two elements, courts utilize a sliding scale:   "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."   *Id.* (quoting *Armendariz*, 24 Cal. 4th at 114) (internal quotation marks omitted).   Regardless of how heavily the scale tips in favor of one element, both must be present to some degree for an agreement to be unconscionable.   *Id.* (citing *Armendariz*, 24 Cal. 4th at 114).

### a.   Procedural Unconscionability

"Procedural unconscionability pertains to the making of the agreement; it focuses on the oppression that arises from unequal bargaining power and the surprise to the weaker party that results from hidden terms or the lack of informed choice."   *Ajamian v. CantorCO2e, LP*, 203 Cal. App. 4th 771, 795, 137 Cal. Rptr. 3d 773 (2012) (citing *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 980, 104 Cal. Rptr. 3d 341 (2010)).

Absent other indicia of oppression or surprise, a contract of adhesion has only a low degree of procedural unconscionability. *Id*. at 796 (citing *Dotson*, 181 Cal. App. 4th at 981-82).

For several reasons, the arbitration provision at issue here is procedurally unconscionable to a high degree. Lima had no ability to negotiate the terms of the Limited Warranty. It arrived on a preprinted form in the box along with his monitor. Moreover, this was not a typical agreement of adhesion offered on a "take it or leave it" basis. Lima could not simply "leave it." He needed to affirmatively reject the Limited Warranty by notifying Gateway and returning the monitor. This affirmative duty was further oppressive because Lima had a very short time—15 days—within which to make his decision. In addition, by opting to reject the arbitration provision, Lima was subject to a hefty 15% restocking fee—a substantial deterrent. *See Cohen v. DirecTV, Inc.*, 142 Cal. App. 4th 1442, 1451 n.10, 48 Cal. Rptr. 3d 813 (2006) (finding heightened evidence of procedural unconscionability where customers may have to pay termination fees to cancel service).

The arbitration provision was also a surprise. When Lima made his purchase, Gateway's telephone sales representative told him only that the monitor was subject to a limited warranty. The representative did not inform Lima of the warranty's arbitration clause. Lima only discovered it weeks after his purchase when he received it by mail. The surprising way in which Lima learned about the arbitration provision underscores the high degree of procedural unconscionability present.

### b.    Substantive Unconscionability

The arbitration provision in the Limited Warranty imposes the following substantive requirements:

> The arbitration will be conducted before a single arbitrator, and will be limited solely to the Dispute between you and Gateway. The arbitration, or any portion of it, will not be consolidated with any other arbitration and will not be conducted on a class-wide or class action basis. The arbitration shall

be held at any reasonable location near your residence by submission of documents, by telephone, online or in person whichever method of presentation you choose.  If you prevail in the arbitration of any Dispute with Gateway, Gateway will reimburse you for any fees you paid to NAF in connection with the arbitration.

Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered thereon in any court of competent jurisdiction.

(Hogan Decl., Ex. 1 at 2.)

"Substantive unconscionability addresses the fairness of the term in dispute." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) (quoting *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100, 118 Cal. Rptr. 2d 862 (2002)) (internal quotation marks omitted).  It arises when an agreement "imposes unduly harsh, oppressive, or one-sided terms," *Ajamian*, 203 Cal. App. 4th at 797, or "reallocates risks in an objectively unreasonable or unexpected manner," *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1317, 27 Cal. Rptr. 3d 797 (2005) (quoting *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1539, 5 Cal. Rptr. 3d 835 (2003)) (internal quotation mark omitted).  The paramount consideration in assessing substantive unconscionability is mutuality.  *Pokorny*, 601 F.3d at 998 (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657, 9 Cal. Rptr. 3d 422 (2004)) (internal quotation marks omitted).  Agreements to arbitrate will be substantively unconscionable if they do not contain at least "a modicum of bilaterality."  *Id.* (quoting *Abramson*, 115 Cal. App. 4th at 657) (internal quotation marks omitted).

In addition, a provision in an adhesion contract that does not fall within the reasonable expectations of the weaker or "adhering" party is substantively unconscionable and will not be enforced against him.  *Thompson v. Toll Dublin, LLC*, 165 Cal. App. 4th 1360, 1372-73, 81 Cal. Rptr. 3d 736 (2008) (citing *Armendariz*, 24 Cal. 4th at 113); *see also Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1573, 98

Cal. Rptr. 3d 743 (2009) ("Substantive unconscionability may be shown if the disputed contract provision falls outside the nondrafting party's reasonable expectations." (citing *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 88, 7 Cal. Rptr. 3d 267 (2003))).

Given the arbitration provision's high degree of procedural unconscionability, Lima need only make a minimal showing of its substantive unconscionability to render it unenforceable. *See Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175, 116 Cal. Rptr. 2d 671 (2002) (citing *Armendariz*, 24 Cal. 4th at 114). The Court finds that this threshold is met under these facts.

### i.      Scope of the Arbitration Provision

Lima's claims, based on Gateway's advertising and marketing, have little to do with the Limited Warranty. Even if Lima might have anticipated that the warranty would contain a provision requiring the arbitration of disputes arising from the application of the warranty, it is completely unexpected that an adhesive consumer warranty would require arbitration of *all* disputes between the parties—including those beyond the scope of the warranty coverage. Because the sweeping scope of the Limited Warranty's arbitration provision exceeds a consumer's reasonable expectations, it is substantively unconscionable. *See Bruni v. Didion*, 160 Cal. App. 4th 1272, 1295, 73 Cal. Rptr. 3d 395 (2008).

### ii.      Greater Cost of Arbitration

Lima argues that the arbitration provision would impose greater costs on him than if he litigated in court. (Opp'n at 17-19.) An arbitration agreement lacks mutuality and is substantively unconscionable if "it imposes on some consumers costs greater than those a complainant would bear if he or she would file the same complaint in court." *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) (citing *Armendariz*, 99 Cal. Rptr. 2d at 110-11).

Citing to NAF's website, Lima asserts that the current NAF fee structure would impose a cost of $500 to $1,000 to bring a modest claim. (Opp'n at 19.) Unconscionability, however, "is determined as of the time the contract is made."

*Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 91, 7 Cal. Rptr. 3d 267 (2003) (citing Cal. Civ. Code § 1670.5); *accord Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003).  NAF's current cost structure does not reflect the cost to a consumer as envisioned under the Limited Warranty because NAF no longer facilitates consumer arbitration.

In August 2008, NAF charged a consumer making claims such as Lima's a $29 filing fee and up to $87.50 for a participatory hearing.[8]  (*See* Gateway's Request for Judicial Notice ("RJN"), Ex. 1 at 3 [Doc. # 56].)  NAF imposed no charge on a consumer for most timely requests and only a $20 processing fee when the consumer filed an objection to the other party's request.  (*Id*. at 5.)  Where, as here, the arbitration agreement does not require the arbitrator to issue written findings, conclusions, or reasons for the award, a consumer who requests them pays $100.  (*Id*. at 7.)

These fees are not substantially more expensive than the $350 filing fee Lima paid to this Court.[9]  Moreover, NAF provided a mechanism whereby consumer claimants who asserted that arbitration fees prevented them from effectively vindicating their rights could seek to impose the costs of arbitration on the other party or have the arbitration agreement declared unenforceable.  *See* NAF Code of Procedure, Rule 44(G), http://www.adrforum.com/resource.aspx?id=1426.  Thus, the Limited Warranty's selection of NAF as the default arbitral forum was not substantively unconscionable on account of NAF's fee structure.

The arbitration agreement's option for an alternative forum, on the other hand, does raise mutuality concerns due to its indefiniteness about the fees that Lima will incur

---

[8] NAF fees vary depending on the amount of the claim.  The Court assumes that Lima's claim is for an amount between $1,501 and $3,500 given that he purchased his monitor for $1,638.75.

[9] Lima compares the NAF fees with the $50 filing fee for small claims court.  (Opp'n at 18-19.) Given that Lima chose to litigate in federal court and paid the $350 filing fee, the Court assumes without deciding that this Court's filing fee is the more appropriate comparator.

there.[10]   The Limited Warranty provides only that if NAF arbitration ceases to be an option, the parties "will agree on another arbitration forum," but it does not incorporate the NAF fee structure in the alternative forum.   It is unclear what fees Lima will face in the as-yet undetermined forum.   Potentially, he could be liable for fees far in excess of this Court's filing fee, depending on Gateway's amenability to low-cost arbitration services.   Although Gateway suggests that the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services ("JAMS") might provide an inexpensive means of arbitration (Mot. at 17), it is not required to agree to either forum— and there is no requirement that the parties select a forum that would limit the consumer's liability for filing fees or the arbitrator's fee.   (*See, e.g.*, Def.'s Request for Judicial Notice, Ex. 3 [Doc. # 56].)

Furthermore, it is unclear whether AAA or JAMS would even hear this dispute as the arbitration agreement prohibits Lima from seeking relief in any court, including small claims court.   JAMS states that it "will administer arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers only if the contract arbitration clause and specified applicable rules comply with . . . minimum standards of fairness," among which are that a consumer who initiates arbitration against a company cannot be required to pay more than $250 in arbitration costs and "no party shall be precluded from seeking remedies in small claims court for disputes or claims within its

---

[10] Although the FAA provides default rules for selecting arbitrators if the parties' agreement fails to specify a method of selection, 9 U.S.C. § 5, the FAA does not limit the amount of fees to be imposed on either party, except that witness fees can be no greater than the fees paid to witnesses appearing before masters of the United States courts.  9 U.S.C. § 7.  California likewise has no gap-filling rule limiting the amount of arbitration fees generally.  When the parties fail to agree how to apportion the fees, California law provides that "each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit."  Cal. Civ. Proc. Code § 1284.2.  Only indigent consumers—defined as persons "having a gross monthly income that is less than 300 percent of the federal poverty guidelines"—are entitled to a fee waiver.  *See id.* § 1284.3.

jurisdiction." (*Id.*, Ex. 3 at 1.)  Similarly, the AAA requires that "[p]arties can still take their claims to a small claims court."  (*Id.*, Ex. 2 at 4.)

The arbitration clause's indefiniteness on the costs to be borne by the consumer imposes greater burdens on the consumer than on Gateway and renders it substantively unconscionable.

### iii.    Ability to Modify the Agreement

Lima also argues that the arbitration agreement lacks mutuality because it "may not be modified, altered or amended without the written agreement of Gateway."  (Opp'n at 20 (quoting Hogan Decl., Ex. 1 at 2) (internal quotation mark omitted).)  This clause does not confer a unilateral benefit on Gateway.  The Limited Warranty does not expressly reserve Gateway's unilateral right to amend or modify its terms.  Without such a reservation, any proposed new terms similarly would require Lima's assent.  Therefore, this feature of the arbitration agreement is neutral.

### iv.    Confidentiality

Another reason for finding substantive unconscionability is the default arbitral forum's rule requiring confidentiality.  Under NAF's rules, arbitration proceedings are confidential unless the parties agree or the law provides otherwise.[11]  *See* NAF Code of Procedure, Rule 4, http://www.adrforum.com/resource.aspx?id=1426.  "Although facially neutral, confidentiality provisions usually favor companies over individuals."  *Ting*, 319 F.3d at 1151.  This is because "companies continually arbitrate the same claims."  *Id.*

---

[11] Gateway contends that the NAF rules are irrelevant to the mutuality analysis because NAF no longer conducts consumer arbitrations.  (Reply at 19.)  As explained above, the NAF rules *are* relevant because the unconscionability analysis must focus on the conditions that existed at the time the parties entered into their agreement.  Moreover, the arbitration provision provides for the application of NAF rules—though not NAF costs—irrespective of the forum ultimately selected by the parties.  "[I]t is possible in some cases for a substitute arbitrator to use the rules specified in an arbitration agreement and where that is so, the mere designation of particular rules to govern an arbitration will not prevent the naming of a substitute arbitrator under [the FAA]."  *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 31, 944 N.E.2d 327 (2011) (citing, *inter alia*, *Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006), *overruled on other grounds by Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007)) (discussing arbitration agreement containing identical language).

(citing *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1476 (D.C. Cir. 1997)).   A company requiring arbitration under a confidentiality agreement "place[s] itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, [it] accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract." *Id.* at 1152.  Thus, NAF's confidentiality requirement contributes to the lack of mutuality that renders the arbitration agreement substantively unconscionable.

### v.  Abandonment of State Statutory Rights

Lastly, Lima asserts that by submitting to arbitration, he would be denied the opportunity to vindicate his rights under California consumer protection statutes.  (Opp'n at 21-24.)  According to Lima, he could not secure affordable legal counsel or necessary expert witnesses to litigate his claims without the possibility of class treatment.  The Supreme Court acknowledged this possibility in *Concepcion* but held that the unconscionability of a class action waiver could not prevent an otherwise valid arbitration agreement.  *See* 131 S.Ct. at 1753 ("The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system.  But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." (citation omitted)).  Lima's reliance on *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 90 Cal. Rptr. 2d 334 (1999), and *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303, 133 Cal. Rptr. 2d 58 (2003) (Opp'n at 24-25), is no longer viable in light of the Ninth Circuit's recent decision in *Kilgore v. KeyBank, National Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012).

Nonetheless, the Court finds that there is at least a minimal level of substantive unconscionability in the arbitration provision at issue here.   Its scope exceeds a consumer's reasonable expectations, the governing rules require confidentiality, and it subjects the consumer to unknown and potentially prohibitive costs in an alternative forum.   Given the overwhelming procedural unconscionability, these elements of

substantive unconscionability suffice to render the arbitration provision as a whole unenforceable.[12]

### IV.

### <u>CONCLUSION</u>

In light of the foregoing, Gateway's Motion to Compel Arbitration is **DENIED**. The parties shall meet and confer within two weeks from the date of this Order and immediately thereafter file a joint status report proposing new pretrial and trial dates and deadlines.

**IT IS SO ORDERED**.

DATED:     August 7, 2012

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

---

[12] Given that the scope of the arbitration provision exceeds a consumer's reasonable expectations and none of Lima's claims arise under the Limited Warranty, severing the offending language is not possible.  *See Bruni*, 160 Cal. App. 4th at 1295.  Moreover, the Court cannot supply new terms to address the vagueness of the process for selecting an alternative arbitral forum.