Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
505 Montgomery Street, Suite 300
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Gordon M. Fauth, Jr. (State Bar No. 190280)
Email: gmf@classlitigation.com
**LITIGATION LAW GROUP**
1801 Clement Avenue, Suite 101
Alameda, California 94501
Telephone (510) 238-9610
Facsimile (510) 337-1431

*Counsel for Individual and*
*Representative Plaintiff Mark D. Lima*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK D. LIMA, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>GATEWAY, INC., a Delaware Corporation,<br><br>            Defendant. | Case No. SACV-09-1366 DMG<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:    Hon. Dolly M. Gee<br>Date:     November 21, 2014<br>Time:     9:30 a.m.<br>Place:    Courtroom 7 |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 21, 2014 at 9:30 a.m. in Courtroom 7 in the above-captioned Court, located at 312 North Spring Street, Los Angeles, CA 90012-4701, before the Honorable Dolly M. Gee, Plaintiff Mark D. Lima will and hereby does move for an order granting preliminary approval of the proposed class action settlement set forth in the parties' Stipulation of Settlement and Release ("Settlement") filed concurrently herewith. Plaintiff seeks an order (1) granting preliminary approval of the proposed Settlement; (2) certifying a Class as defined herein for settlement purposes only, and appointing Plaintiff as Class Representative and his counsel as Class Counsel; (3) approving the selection of the Settlement Administrator; (4) approving the Parties' proposed notice program and forms of notice; (5) directing that notice of the proposed Settlement be given to the Class; and (6) setting a final approval hearing to determine whether the proposed Settlement is fair, reasonable and adequate and whether attorneys' fees, reimbursement of expenses and an incentive award should be approved and in what amounts. This motion is made pursuant to Fed. R. Civ. P. 23 and is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the declarations of Rosemary M. Rivas and Gordon M. Fauth and exhibits attached thereto; and such evidence and arguments as the Court may consider at the hearing on this motion.

DATED: October 17, 2014                     Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**


By: /s/ Rosemary M. Rivas
Rosemary M. Rivas
505 Montgomery Street, Suite 300
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Gordon M. Fauth, Jr.
**LITIGATION LAW GROUP**
1801 Clement Avenue, Suite 101
Alameda, California 94501
Telephone (510) 238-9610
Facsimile (510) 337-1431

*Counsel for Individual and Representative
Plaintiff Mark Lima*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
CASE NO. SACV-09-1366 DMG

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................... 1

II.  SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS ............ 2

    A.  Plaintiff's Counsel Extensive Factual and Legal Investigation ..................... 2

    B.  The Alleged Claims Were Aggressively Litigated ...................................... 2

    C.  Plaintiff Conducted Substantial Discovery Before Engaging in Settlement Negotiations ..................................................................................... 4

    D.  The Settlement Negotiations Were Conducted in Good Faith and at Arm's Length ................................................................................... 4

III.  THE PROPOSED TERMS OF SETTLEMENT ........................................... 5

    A.  Monetary Consideration: A $195 Cash Settlement to Each Class Member ... 5

    B.  Dissemination of Notice to the Settlement Class. .......................................... 6

    C.  Incentive Award and Attorneys' Fees and Expenses ...................................... 7

    D.  Release Provisions ..................................................................................... 7

    E.  Objection and Opt-Out Provisions ............................................................ 7

    F.  Entry of Judgment and Continuing Jurisdiction. ......................................... 8

IV.  PRELIMINARY APPROVAL IS APPROPRIATE ....................................... 8

    A.  The Settlement Approval Process ............................................................ 8

    B.  The Proposed Settlement is Presumptively Fair and Easily Meets the Requirements for Preliminary Approval .................................................. 9

        1.  The Settlement Negotiations Were At Arm's Length. ....................... 10

i

2.   Plaintiff's Counsel Had Ample Discovery to Make an Informed Judgment on the Merits of the Claims ...................................10

3.   Plaintiff's Counsel, Who are Highly Experienced in False Advertising Cases and Class Action Procedure, Believe the Settlement is Fair, Reasonable and Adequate ...........................................11

4.   The Risks of Litigation Support Approval .........................................12

5.   The Reaction to the Proposed Settlement ...........................................12

V.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE…. ......................................................................................13

A.   The Class Satisfies the Numerosity Requirement........................................14

B.   The Class Satisfies the Commonality Requirement....................................14

C.   Plaintiff Meets the Typicality Requirement....................................................15

D.   The Plaintiff Satisfies the Adequacy Requirement ......................................16

E.   The Class Satisfies the Criteria of Rule 23(b)................................................17

1.   Common Questions Predominate. ...........................................17

2.   A Class Action Is The Superior Method For The Fair And Efficient Adjudication Of This Controversy. ....................................19

a.   The Individual Class Members' Interest in Controlling the Litigation................................................................20

b.   Extent and Nature of Litigation Already Commenced by Class Members ..................................................................20

c.   The Desirability of Concentrating the Litigation In a Particular Forum..................................................................20

d.   This Case is Manageable As a Class Action ............................21

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VI.   THE PROPOSED NATURE AND METHOD OF PROVIDING CLASS NOTICE
      ARE CONSTITUTIONALLY SOUND AND APPROPRIATE.............................21

      A.    The Manner of Giving Direct Notice - By Email/First Class Mail - More than
            Meets Due Process Requirements .................................................................22

      B.    The Manner of Giving Indirect Notice - By Publication - More Than Meets
            Due Process Requirements ...........................................................................23

      C.    The Content of the Notice Satisfies Rule 23(e) ..........................................23

VII.  PROPOSED SCHEDULE...........................................................................................24

VIII. CONCLUSION............................................................................................................24

iii

# TABLE OF AUTHORITIES

**Federal Cases**

*AT&T Mobility L.L.C. v. Concepcion*,
  131 S. Ct. 1740 (2011) .................................................................... 3

*Abels v. JBC Legal Group, P.C.*,
  227 F.R.D. 541 (N.D. Cal. 2005) ............................................... 13

*Alberto v. GMRI, Inc.*,
  252 F.R.D. 652 (E.D. Cal. 2008) ................................................. 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................ 13, 17, 18, 21

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) .............................................................. 17

*Beck-Ellman v. Kaz USA, Inc.*,
  No. 10-cv-02134, WL 1748729 (S.D. Cal. Jan. 7, 2013) ............ 9

*Bellows v. NCO Fin. Sys.*,
  No. 3:07-cv-01413-W-AJB, WL 4155361 (S.D. Cal. Sept. 5, 2008) ........ 22

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ..................................................... 13

*Bruno v. Eckhart Corp.*,
  280 F.R.D. 540 (C.D. Cal. 2012) ............................................... 21

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
  917 F.2d 26 (9th Cir. 1990) ....................................................... 15

*Churchill Vill. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) ..................................................... 12

*Colesberry v. Ruiz Food Prods. Inc.*,
  No. CVF-04-5516-AWI, 2006 WL 1875444 (E.D. Cal. June 30, 2006) .................. 24

*Daugherty v. Honda Motor Co., Inc.*
  144 Cal. App. 4th 824 (2006) ...................................................... 3

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................. 22

iv

*Franks v. Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981) .................................................................. 22

*Greene v. Lindsey*,
   456 U.S. 444 (1982) ................................................................................. 23

*Gribble v. Cool Transps.*,
   No. CV 06-04863, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ............................ 13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................ 13, 14, 15, 16, 18

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ..................................................................... 15

*Harriss v. Pan Am. World Airways, Inc.*,
   74 F.R.D. 24 (N.D. Cal. 1977) .............................................................. 16, 17

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) .................................................................. 23

*In re Connecticut General Life Ins. Co.*,
   No. CV 06-04863 GAF, 1997 WL 5281665 (C.D. Cal. Feb. 13, 1997) ...................... 13

*In re Employee Benefit Plans Secs Litig*,
   No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ........................................ 10

*In re Heritage Bond Litig.*,
   2004 WL 1638201 (C.D. Cal. July 12, 2004) ........................................................ 14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ................................................................. 20

*In re THQ, Inc. Sec. Litig,*
   No. CV 00-1783 AHM (Ex), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ........... 14

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................ 1, 9, 22

*Johns v. Bayer Corp.*
   280 F.R.D. 551 (S.D. Cal. 2012) ................................................................ 13, 16, 19

*Johnson v. Gen. Mills*,
   No. 10-00061, 2013 WL 3213832 (C.D. Cal. June 17, 2013) .................................. 21

*Keilholtz v. Lennox Health Prods., Inc.*,
    268 F.R.D 330 (N.D. Cal. 2010) ............................................................. 16

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ............................................................. 18

*La Mar v. H & B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) ............................................................. 18

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ............................................................. 16

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................. 8

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ............................................................. 20

*Lombardi v. DirecTV, Inc.*,
    546 F. App'x 715 (9th Cir. 2013) ............................................................. 11

*Mennonite Bd. of Missions v. Adams*,
    462 U.S. 791 (1983) ............................................................. 23

*Montanez v. Gerber Childrenswear, LLC.*,
    No. CV 09-7420, 2011 WL 6757875 (C.D. Cal. Dec. 15, 2011) ........................ 14, 16

*Moshogiannis v. Security Consultants Group, Inc.*,
    No. 5:10-cv-05971, 2012 WL 423860 (N.D. Cal. Feb. 8, 2012) ............................ 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................. 21

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 10

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ............................................................. 20

*Officers for Justice v. Civil Serv. Com.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................. 9

*Phillips Petroleum. Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................. 20

vi

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ............................................................. 14

*Rodriguez v. W. Publ'g Corp*,
    563 F.3d 948 (9th Cir. 2009) ................................................................. 8

*Schmidt v. Smith & Wollensky*,
    268 F.R.D. 323 (N.D. Cal. 2010) ............................................................. 16

*Schroder v. City of New York*,
    371 U.S 208 (1962) ............................................................................. 23

*Sterling v. Velsicol Chem. Corp.*,
    855 F.2d 1188 (6th Cir. 1988) ............................................................. 19

*Tchoboian v. Parking Concepts, Inc.*,
    No. SACV 09-422, 2009 WL 2169883 (C.D. Cal. July 16, 2009) ............................ 20

*Thomas v. Baca*,
    231 F.R.D. 397 (C.D. Cal. 2005) ............................................................. 18

*Tulsa Prof'l Collection Servs., Inc. v. Pope*,
    485 U.S. 478 (1988) ............................................................................. 23

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................. 8

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ................................................................. 17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................. 13, 14

*Westways World Travel, Inc. v. AMR Corp.*,
    218 F.R.D. 223 (C.D. Cal. 2003) ............................................................. 20

*Williams v. Gerber*,
    552 F.3d 934 (9th Cir. 2008) .......................................................... 18, 19

*Wolin v. Jaguar Land Rover N. Am., LLC.*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................. 20

*Young v. Polo Retail*
    No C-02-4546, 2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) ............... 10

vii

*Yokayama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) .................................................................... 19

*Zinser v. Accufix Research Inst.*,
    253 F.3d 1180 (9th Cir. 2001) .................................................................... 13

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................... 2

Cal. Bus. & Prof. Code § 17500 ................................................................. 2, 3

Cal. Civ. Code § 1781 ...................................................................................... 6

Cal. Civ. Code § 1750...................................................................................... 2

Cal. Civ. Code § 21.632-.635 .......................................................................... 8

**Federal Statutes**

Fed. R. Civ. P. 23 ............................................................................................. 1

Fed. R. Civ. P. 23(b)(3) ................................................................................. 19

Fed. R. Civ. P. 23(e)(1)(A) .............................................................................. 8

TABLE OF CONTENTS & TABLE OF AUTHORITIES
CASE NO. SACV-09-1366 DMG

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After over four years of hard-fought litigation, Plaintiff Mark D. Lima ("Plaintiff") is pleased to inform the Court that he has reached a proposed class action settlement with Defendant Gateway, Inc. ("Gateway" or "Defendant"). The settlement is memorialized in the accompanying Stipulation of Settlement and Release ("Settlement" or "Stipulation"), which resolves claims that Defendant sold Gateway branded monitors that did not perform as advertised. The proposed Settlement provides meaningful consideration for Class Members. Specifically, Gateway will pay $195 in cash to each original owner who bought a Gateway 30" XHD 3000 LCD Monitor (hereinafter, "XHD 3000" or "Monitor") and submits a valid Claim Form for payment.

By this motion, Plaintiff hereby wishes to begin the approval process outlined in the MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.63 (2004) (hereinafter "MANUAL") for the settlement of class actions. Plaintiff respectfully requests that the Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) certifying a Class as defined herein for settlement purposes only, and appointing Plaintiff Lima as the Class Representative and his counsel, Finkelstein Thompson LLP and Litigation Law Group, as Class Counsel; (3) approving the selection of the Settlement Administrator; (4) approving the Parties' proposed notice program and forms of notice; (5) directing that notice of the proposed Settlement be given to the Class; and (6) setting a final approval hearing to determine whether the proposed Settlement is fair, reasonable and adequate and whether attorneys' fees, reimbursement of expenses and an incentive award should be approved and in what amounts.

As set forth below, the proposed Settlement is well "within the range of possible approval," such that the Court should grant preliminary approval, authorize notice to the Class, and schedule a final approval hearing. *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Before engaging in settlement negotiations, Plaintiff conducted a substantial amount of formal and informal discovery, and

understood the strengths, weaknesses and risks of proceeding through to class certification and trial. The settlement discussions were always at arm's length and took place while the case was on appeal in the Ninth Circuit from the Court's order denying Defendant's motion to compel arbitration. Further, Plaintiff is represented by counsel experienced in class action litigation who believe the Settlement is fair, reasonable and adequate.  Accordingly, Plaintiff respectfully requests that the Court grant this motion.

## II.    SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.    Plaintiff's Counsels' Extensive Factual and Legal Investigation

The law firms of Finkelstein Thompson LLP ("FT") and Litigation Law Group ("LLG") (collectively "Plaintiff's Counsel" or "Counsel") have investigated, researched and prosecuted this case here since 2009.  *See* accompanying Declaration of Rosemary M. Rivas ("Rivas Decl."), ¶ 5. Among other things, Plaintiff's Counsel investigated problems experienced by consumers, such as green banding and flickering, that appeared on the Monitor's screen when in use, and the reasons for the defects.  *See* accompanying Declaration of Gordon M. Fauth ("Fauth Decl.") ¶¶ 3-6.  Plaintiff's Counsel also investigated Defendant's advertising and marketing of the Monitor, such as press releases, product reviews, and other materials on Defendant's website.

Plaintiff's Counsel also researched and analyzed the merits of the potential causes of action, including the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.,* the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*. Rivas Decl. ¶ 5.  Plaintiff's Counsel also researched the potential defenses to the claims and class certification.  *Id.* at ¶¶ 5-9.

### B.    The Alleged Claims Were Aggressively Litigated

On November 23, 2009, Plaintiff filed the case alleging that Defendant promoted the XHD 3000 as having superior quality and high functioning capability, yet it failed to perform as advertised, in violation of the CLRA, UCL, and FAL. Dkt. No. 1, ¶¶ 1-5. On January 22, 2010, Plaintiff filed an amended complaint against Defendant alleging that it

falsely advertised the XHD 3000's features on the product's packaging, press releases, and on the Internet as "the world's first 'Quad-HD' display, delivering more than four times the resolution of standard 720p high definition along with advanced display technology"; offering a "visually intense" gaming experience designed "to avoid skipped graphics or screen stutter"; and "providing maximum investment protection and long-term functionality." Dkt. No. 7, ¶ 15. Plaintiff also alleged that Defendant failed to disclose the Monitor's defects. *Id.* at ¶¶ 48, 66.

Defendant filed a motion to dismiss on February 22, 2010, arguing, among other things, that under *Daugherty v. Honda Motor Co., Inc.,* 144 Cal. App. 4th 824 (2006), product defects manifesting themselves after the applicable warranty expires are not the responsibility of the product manufacturer. Dkt. No. 9. Plaintiff vigorously opposed the motion to dismiss, which the Court ultimately denied. Dkt. Nos. 15, 20. Shortly thereafter, on May 10, 2010, Defendant filed its answer. Dkt. No. 21.

Over the next several months, the Parties engaged in discovery and Plaintiff began preparing his motion for class certification.  On April 27, 2011, the United States Supreme Court issued its decision in *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011). The *Concepcion* decision changed the landscape of arbitration clauses in consumer contracts and specifically held that California's rule from *Discover Bank v. Superior Court,* 36 Cal. 4th 148 (2005), finding class action waivers unconscionable, was preempted by the Federal Arbitration Act.

Defendant filed a motion to compel arbitration on June 17, 2011, and Plaintiff filed his opposition on July 15, 2011. Dkt.  Nos. 55, 59. Defendant filed its reply on July 29, 2011. Dkt. No. 67. After several subsequent briefings and filings, on August 7, 2012, the Court denied Defendant's motion to compel arbitration finding that "the arbitration provisions are procedurally and substantively unconscionable and therefore unenforceable." Dkt. No. 99.

Defendant appealed the Court's decision denying the motion to compel arbitration to the Ninth Circuit.  After the Parties completed their appellate briefing and

3

approximately one month before the scheduled oral argument before the Ninth Circuit, the Parties began settlement discussions. *See* Appellate Dkt. No. 36.

### C.   Plaintiff Conducted Substantial Discovery Before Engaging in Settlement Negotiations

Aside from engaging in extensive motion practice, Plaintiff's Counsel also conducted a substantial amount of discovery.  Plaintiff propounded several document requests and interrogatories on Defendant requesting information about the Monitor's representations, advertisements, reviews, performance tests, reliability, manufacturing, design changes, complaints, problems, failures, and customer service data. Rivas Decl. ¶ 9.  Plaintiff reviewed numerous documents produced by Defendant regarding the foregoing topics, including the Monitor's design and engineering, and Plaintiff communicated with experts, among other things. *Id.*

### D.   The Settlement Negotiations Were Conducted in Good Faith and at Arm's Length

Plaintiff's Counsel vigorously litigated the claims at issue for four years, at both the District Court and the Ninth Circuit, before engaging in the settlement negotiations that led to the Settlement.  The resulting terms of the proposed Settlement were negotiated in good faith and at arm's length by lawyers experienced in class litigation and arbitration and who are thoroughly familiar with the merits of the claims and the risks associated with continued litigation.  Rivas Decl. ¶ 10; Fauth Decl. ¶¶ 6-7.

Plaintiff's Counsel's primary goal was to achieve the maximum cash payments they could for the proposed Class Members.  Rivas Decl. ¶ 11; Fauth Decl. ¶ 6. Additionally, since the Parties had fully briefed the appeal before the Ninth Circuit and were only one month away from the date scheduled for oral argument when they began settlement negotiations, they were thoroughly familiar with numerous decisions on arbitration issued by district courts and circuit courts nationwide. Thus, the Parties were able to adequately assess the risks of continued litigation on appeal.

The Parties first focused on the amount of the cash payment and the other material

4

terms relating to the relief for the Class Members. Rivas Decl. ¶ 11; Fauth Decl. ¶ 6. Only after they reached the $195 figure and the other material terms relating to the class relief did they turn to negotiating the attorneys' fees and the proposed incentive award. *Id.* Once an agreement in principle was reached, they exchanged drafts of the settlement agreement, class notice, claim form, and other settlement documents.  Rivas Decl. ¶ 12. The Parties executed the Stipulation on October 16, 2014.  *Id.* at ¶13.

## III.   THE PROPOSED TERMS OF SETTLEMENT

### A.   Monetary Consideration: A $195 Cash Settlement to Each Class Member

The Class is defined as: all persons or entities in the United States who are original purchasers of a Gateway 30" XHD 3000 LCD Monitor.[1]  Gateway will pay to each Class Member $195 for each Monitor purchased providing the Class Member submits a valid Claim Form for payment and proof of purchase including, but not limited to, a copy of a receipt, credit card statement (with sufficient detail to show the purchase of the monitor), or serial number, with a declaration attesting to the injury.  Stipulation ¶ 4.2.

---

[1] Excluded from the Class are:

      (a)   the officers, directors and employees of any entity which is or has been a Defendant, members of the immediate families of the foregoing, and their legal representatives, heirs, successors and assigns;

      (b)   the officers, directors and employees of any parent, subsidiary or affiliate of either of the Defendants or any business entity in which any of the Defendants owns a controlling interest, together with those individuals' immediate family members;

      (c)   Counsel for Defendants and their immediate family members;

      (d)   Governmental entities;

      (e)   Persons who timely and properly exclude themselves from the Class as provided in the Stipulation; and

      (f)   The Court, the Court's immediate family, and Court staff.

Stipulation ¶ 1.4.

### B.   Dissemination of Notice to the Settlement Class.

The costs of providing notice and settlement administration will be paid by Gateway.  Stipulation ¶ 7.1.  A copy of the Long Form Class Notice will be delivered to Class Members via U.S. mail and/or electronic mail for those whom physical addresses and/or email addresses are within Gateway's registration records (by both methods where both mailing and email addresses are in Gateway's possession), plus any supplied by Class Counsel. *Id.* at ¶ 7.2(a).  Gateway has physical and email addresses for approximately thirty percent (30%) of Class Members. *See* Declaration of Alan Vasquez Re: Dissemination of Notice to Class Members ("Vasquez Decl."), ¶ 18 (attached as Exhibit C to the Rivas Declaration). Notice of the Settlement will also be published using Internet advertising. Stipulation ¶ 7.2(b).

Additionally, a website at www.gatewayXHD3000monitor.com  ("Settlement Website") will be established before the beginning of the dissemination of class notice and shall remain active until one year after the Judgment becomes final.  *Id.* at ¶ 7.2(c). The Settlement Website will include important court documents, such as a copy of the Class Notice, the Claim Form, the Stipulation, the Complaint, contact information for the Settlement Administrator and Class Counsel, and answers to frequently asked questions; and will allow online submission of claims.  *Id.*  A toll-free telephone number and email address will also be established so that Class Members can obtain Settlement-related information.  *Id.*

Notice to the proposed class will also be provided by publication. A copy of the Summary Notice will be published in the Orange County Register in compliance with Cal. Civ. Code Section 1781 of the California Consumers Legal Remedies Act.

Further, notice will be published on the Internet. Specifically, the Claims Administrator, using targeted advertising, will cause banner ads providing notice of the Settlement and redirection to the Settlement Website will appear on various Internet websites relating to online technology and computer shoppers and purchasers estimated to reach 57% of potential class members.  Vasquez Decl. ¶ 19

6

1   The Settlement Administrator will also use social media to publicize the Settlement
2   including Facebook, Twitter, and technology and computer blogs. Vasquez Decl. ¶ 22.
3   Finally, the Settlement will be published via PR Newswire. *Id.*

4   The notice program is designed to reach at least 70% of the Class Members, which
5   is consistent with the FEDERAL JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND
6   CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010).  Vasquez Decl. ¶ 23.

7   As required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §
8   1715, Gateway will provide notice to the appropriate federal and state officials within ten
9   (10) days after the Settlement is filed with the Court. Stipulation ¶ 5.2.

10  **C.   Incentive Award and Attorneys' Fees and Expenses**

11  Plaintiff's Counsel will apply to the Court for an Incentive Award for Plaintiff
12  Mark Lima in an amount not to exceed $8,000.00 to reward him for his efforts during the
13  action, pre-filing stage of the action, prosecuting the case, including retaining counsel,
14  reviewing and authorizing the filing of the complaint, responding to discovery, assisting
15  in research into the alleged Monitor defects, reviewing the proposed Settlement,
16  providing declarations in connection with the arbitration motion, and keeping abreast of
17  the litigation. Defendant does not oppose the award.  *Id.* at ¶ 4.3(a). Plaintiff's Counsel
18  will also apply to the Court for an award of attorneys' fees and reimbursement of
19  litigation expenses not to exceed $620,000.00, which is less than the combined lodestar
20  and expenses incurred in the case.  *Id.* at ¶ 10.3.

21  **D.   Release Provisions**

22  If the Court grants final approval of the proposed Settlement, Settlement Class
23  Members will be deemed to have released Defendant of all claims that were asserted or
24  could have been asserted in the litigation or in the Complaint relating to the Monitor's
25  advertising or defects. *Id.* at ¶ 6.

26  **E.   Objection and Opt-Out Provisions**

27  Class Members will have the opportunity to object to the Settlement or to request
28  exclusion. Stipulation ¶¶ 8-9.

**F.     Entry of Judgment and Continuing Jurisdiction.**

If the Court grants final approval of the proposed Settlement, the Parties will request that the Court enter a final judgment of dismissal. The Court will retain jurisdiction over the implementation of the Settlement. *Id.* at ¶ 15.6.

## IV.   PRELIMINARY APPROVAL IS APPROPRIATE

### A.     The Settlement Approval Process

The Ninth Circuit has a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (citation omitted); *see also* Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise.").  There is an "overriding public interest in settling and quieting litigation," *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), and the Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) *vacated on other grounds* 688 F.3d 645.

Where, as here, the Parties propose to resolve the claims of a certified class through settlement, they must obtain the Court's approval.  *See* Fed. R. Civ. Proc. 23(e)(1)(A).  The typical process for approving class action settlements is described in the MANUAL §§ 21.632-.635:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing," or final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. *Id.*

This procedure, commonly employed by federal courts, serves the dual function of

8

1  safeguarding class members' procedural due process rights and enabling the court to
2  fulfill its role as the guardian of class members' interests.  *See* NEWBERG § 11.25.

3      Plaintiff asks that the Court grant preliminary approval of the proposed Settlement.
4  At this stage, the Court "must make a preliminary determination of the fairness,
5  reasonableness, and adequacy of the settlement terms and must direct preparation of
6  notice of the certification, proposed settlement, and date of the final fairness hearing."
7  MANUAL § 21.632. Courts should grant preliminary approval and direct notice to the class
8  if the settlement has no obvious deficiencies and "falls within the range of possible judicial
9  approval."  NEWBERG, *supra*, § 11.25; *Beck-Ellman v. Kaz USA, Inc.,* No. 10-cv-02134,
10  2013 WL 1748729, at *15 (S.D. Cal. Jan. 7, 2013); *Alberto v. GMRI, Inc.,* 252 F.R.D.
11  652, 666 (E.D. Cal. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079;

12      At the next stage of the approval process, the formal fairness hearing, courts
13  consider arguments in favor of and in opposition to the settlement.  According to the
14  Ninth Circuit, the fairness hearing should not be turned into a "trial or rehearsal for trial
15  on the merits."  *Officers for Justice v. Civil Serv. Com'n of City and County of San
16  Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  "Neither the trial court nor this court is to
17  reach any ultimate conclusions on the contested issues of fact and law which underlie the
18  merits of the dispute . . . ."  *Id.* Rather, the inquiry "must be limited to the extent
19  necessary to reach a reasoned judgment that the agreement is not the product of fraud or
20  overreaching by, or collusion between, the negotiating parties, and that the settlement,
21  taken as a whole, is fair, reasonable and adequate to all concerned."  *Id.*

22  **B.**    **The Proposed Settlement is Presumptively Fair and Easily Meets the
23  Requirements for Preliminary Approval**

24      Courts generally employ a multi-prong test to determine whether preliminary
25  approval is warranted.  A proposed class action settlement is presumptively fair and
26  should be preliminarily approved if the Court finds that: (1) the negotiations leading to
27  the proposed settlement occurred at arm's length; (2) there was sufficient discovery in the
28  litigation for the plaintiff to make an informed judgment on the merits of the claims; (3)

the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class object. *See Young v. Polo Retail,* No C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077, *12-13 (N.D. Cal. Oct. 25, 2006); *see also* NEWBERG § 11.41. The proposed Settlement easily satisfies these requirements.

### 1. The Settlement Negotiations Were At Arm's Length.

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." NEWBERG §11.41; *see also Nat'l Rural Telecomm. Coop. v. DIRECTTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) (great weight given to the recommendation of counsel who are the most closely acquainted with the facts of the litigation); *In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) (same).

There is no doubt that the proposed Settlement was reached through arm's length bargaining. For over four years, the Parties engaged in extensive, adversarial motion practice and discovery. After rulings on several critical motions (including the motion to dismiss and to compel arbitration), preparing for class certification, submitting appellate briefs, and preparing for an appellate oral argument, the Parties engaged in several settlement discussions armed with sufficient discovery and well-researched and thought-out assessments of the likelihood of success at the Ninth Circuit, at certification, and on the merits. Moreover, the Parties finalized a written settlement agreement while the case was on appeal, and after negotiations spanning a period of seven months. Rivas Decl. ¶¶ 12-13. At all times, these negotiations were at arm's length and it was always Plaintiff's Counsel's goal to achieve the maximum relief for the Class. *Id.* at ¶¶ 10- 11; Fauth Decl. ¶ 6.

### 2. Plaintiff's Counsel Had Ample Discovery to Make an Informed Judgment on the Merits of the Claims.

As described above, before engaging in settlement negotiations, Plaintiff's Counsel undertook substantial factual discovery regarding class certification, liability and

10

damages/restitution. Rivas Decl. ¶ 9. Plaintiff's Counsel reviewed numerous documents, and Defendant's discovery responses. *Id.* Moreover, Plaintiff's Counsel undertook a significant amount of informal factual discovery and research. *Id.* Counsel analyzed all this information in light of relevant rulings by California District Courts, the Ninth Circuit, and the Supreme Court. *See id.* at ¶¶ 5- 8. Accordingly, Plaintiff's Counsel made informed decisions when negotiating the proposed Settlement. *See id.*

### 3. Plaintiff's Counsel, Who are Highly Experienced in False Advertising Cases and Class Action Procedure, Believe the Settlement is Fair, Reasonable and Adequate.

Finally, in negotiating the proposed Settlement, Plaintiff had the benefit of highly skilled and experienced counsel. Rivas Decl., Exh. A (FT firm resume); Fauth Decl., Exh. A (LLG firm resume). FT and LLG have broad experience litigating consumer class action cases, particularly on behalf of plaintiffs. *Id.* In Plaintiff's Counsel's view, the Settlement is fair, reasonable and adequate, especially when one considers the attendant expenses, risks, delays, and uncertainties of litigation, trial and post-trial proceedings. Rivas Decl. ¶14; Fauth Decl. ¶ 7.

For example, if the case continued on appeal, there is no guarantee that the Ninth Circuit would affirm the Court's order denying the motion to compel arbitration. California Courts have repeatedly rejected unconscionablity arguments after *Concepcion* and have enforced arbitration clauses. *See, e.g., Lombardi v. DirecTV, Inc.,* 546 F. App'x 715 (9th Cir. 2013) (reversing order denying motion to compel arbitration). If the Ninth Circuit reversed the Court's order denying Gateway's motion to compel arbitration, Class Members would be forced to arbitration and it is likely that few, if any, Class Members would file in arbitration, resulting in zero recovery. In contrast, the proposed Settlement provides $195 per Monitor in cash, simply by filling out and submitting a valid Claim Form. Thus, Plaintiff's Counsel believes the proposed Settlement is fair, reasonable and adequate.

//

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
CASE NO. SACV-09-1366 DMG

### 4.     The Risks of Litigation Support Approval

The Settlement provides for meaningful cash payments without the risks, costs, and delays inherent in continued litigation, trial, and appeal of Plaintiff's claims.  The expense, complexity, and duration of litigation are important factors considered in evaluating the reasonableness of a settlement.  *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 576 (9th Cir. 2004).  Litigating this class action through trial would be time-consuming and expensive.  As with most class actions, the claims at issue are complex and risky.

If Plaintiff prevailed at the Ninth Circuit on arbitration, class certification nevertheless would pose a risk and, in false advertising cases, often involves an expensive and prolonged battle of the experts in connection with certification, merits and damages issues.  If Plaintiff was unable to certify a class, the case would effectively be over, and the Class would gain nothing from continued litigation.

Assuming Plaintiff prevailed at class certification, proving liability on the merits would require further risky litigation and additional expert work.  Even if Plaintiff successfully passed the certification and liability hurdles, a battle would ensue concerning whether Gateway's representations were likely to deceive reasonable consumers and the amount of damages.  Although Plaintiff was and remains confident in the strength of his case and would have been prepared to litigate it through trial at all times, the risks of continued litigation are numerous and real.

By contrast, the Settlement provides cash benefits to the Class, a remedy that Class Members could hope to obtain through litigation only when and if they successfully passed each and every one of the above hurdles.  A settlement that provides significant monetary relief to the Class is fair, reasonable and adequate.

### 5.     The Reaction to the Proposed Settlement

Plaintiff and his counsel fully support the Settlement as fair, reasonable and adequate. Rivas Decl. ¶14; Fauth Decl. ¶ 7.  It is too early to tell how the Class will react to it, since notice of the Settlement has not yet occurred.

*//*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
CASE NO. SACV-09-1366 DMG

1

## V.    __CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS__

2
## __APPROPRIATE__

3        The party seeking class certification bears the burden of showing that each of Rule

4 23(a)'s requirements and at least one of the requirements of Rule 23(b) are met. *Hanlon*

5 *v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.1998); *Wal–Mart Stores, Inc. v. Dukes*,

6 131 S. Ct. 2541, 2548 (2011). To certify a class under Rule 23(a), the court must find: (1)

7 numerosity, (2) common questions of law or fact, (3) that the named plaintiff's claims are

8 typical of the claims of the class, and (4) that the named plaintiff and plaintiff's counsel

9 can adequately protect the interests of the class. *Amchem v. Windsor*, 521 U.S. 591, 613

10 (1997); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Class

11 certification is appropriate here under Rule 23(a) and Rule 23(b)(3).

12        "Class action certifications to encourage compliance with consumer protection

13 laws are 'desirable and should be encouraged.'" *Johns v. Bayer Corp.,* 280 F.R.D. 551,

14 555 (S.D. Cal. 2012) (S.D. Cal. Feb. 3, 2012) (quoting  *Ballard v. Equifax Check Servs.,*

15 *Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999)); *Abels v. JBC Legal Grp.*, 227 F.R.D. 541,

16 547 (N.D. Cal. 2005). While the merits of the class members' substantive claims are

17 relevant to the class certification decision, the district court must "not conduct a mini-trial

18 to determine if the class 'could actually prevail on the merits of their claims.'" *Johns*,

19 280 F.R.D. at 555 (citation omitted). "The amount of damages is invariably an individual

20 question and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891,

21 905 (9th Cir.1975); *Stearns v. TicketMaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011).

22        The use of settlement classes is common and proper in the resolution of class action

23 lawsuits. *See, e.g., Gribble v. Cool Transports,* No. CV 06-04863, 2008 WL 5281665, at

24 *3 (C.D. Cal. Dec. 15, 2008) (certifying class for settlement purposes only); *In re*

25 *Connecticut General Life Ins. Co.,* No. MDL 1136, CV 95-3566, 1997 WL 910387, at *1

26 (C.D. Cal. Feb. 13, 1997) (certifying for the purposes of settlement, the settlement class

27 defined in the settlement agreement). Here, the Class is defined as: all persons or entities

28 in the United States who are original purchasers of a Gateway 30" XHD 3000 LCD

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
CASE NO. SACV-09-1366 DMG

monitor.  Stipulation ¶ 1.4. The Settlement sets forth an identifiable and ascertainable class.

### A.   The Class Satisfies the Numerosity Requirement

The numerosity requirement of Rule 23(a)(1) is satisfied when "joinder of all members is impracticable."  The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least twenty members. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *In re THQ, Inc. Sec. Litig.*, No. CV 00-1783 AHM (Ex), 2002 WL 1832145, *2 (C.D. Cal. Mar. 22, 2002).  The numerosity requirement is met because Defendant here sold approximately 4,481 monitors.

### B.   The Class Satisfies the Commonality Requirement

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class."  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551.  This means that the class members' claims "must depend on a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  "The existence of shared legal issues with divergent factual predicates is sufficient." *Hanlon,* 150 F.3d at 1019; *see also In re Heritage Bond Litig.*, No. MDL 02-ML-1475 DT, 2004 WL 1638201, *14 (C.D. Cal. July 12, 2004).  "Courts look for shared legal issues or a common core of facts." *Montanez v. Gerber Childrenswear, LLC*, No. CV 09-7420 DSF, 2011 WL 6757875, at *6 (C.D. Cal. Dec. 15, 2011) (internal quotations and citations omitted).  It is unnecessary for both to be present. *Id.*[2] This requirement is also satisfied.

---

[2]   In the wake of *Wal-Mart Stores, Inc. v. Dukes*, commonality now requires "the plaintiff to demonstrate that the class members 'have suffered the same injury.'" 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  The claims of all class members "must depend on a common contention," which is "of such a

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
CASE NO. SACV-09-1366 DMG

Here, questions of law and fact common to all Class Members, pointing to a common contention and injury, include: (a) whether Gateway represented that the XHD 3000 would provide advanced display technology, maximum investment protection and long-term functionality; (b) Whether Gateway failed to disclose or adequately disclose material information, namely, that the XHD 3000 was defective and hence would not provide advanced display technology, maximum investment protection and long-term functionality; (c) Whether the XHD 3000 monitor was defective; and (d) Whether Defendant knew or should have known that the XHD 3000 was defective. These questions are common to all Class Members and drive the litigation. Therefore, the commonality requirement is met.

## C.   <u>Plaintiff Meets the Typicality Requirement</u>

The typicality requirement of Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The test for typicality focuses on whether (1) other members have the same or similar injury as the representative; (2) the action is based on conduct not unique to the representative; and (3) other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality does not require the claims to be substantially identical. *Hanlon*, 150 F.3d at 1020. Rather, the Ninth Circuit has found typicality if the requisite claims "'share a common issue of law or fact' . . . and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir. 1990) (citations omitted), amended, 937 F.2d 465 (9th Cir. 1991). Courts consistently find that the typicality requirement is satisfied if the claims arise from a common course of conduct. *See e.g.. Keilholtz v. Lennox Health*

---

nature that it is capable of classwide resolution-which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
CASE NO. SACV-09-1366 DMG

*Prods., Inc.,* 268 F.R.D. 330, 338 (N.D. Cal. 2010) (typicality found where plaintiffs claims were all based on omissions of safety warnings).

Plaintiff's claims are coextensive with those of the proposed Class, and thus typicality is satisfied. Like every other Class Member, Plaintiff bought the Monitor and was exposed to Defendant's misrepresentations. Plaintiff's representation of the Class is appropriate because he was subjected to the same alleged unlawful conduct and suffered essentially identical injury flowing from that uniform conduct. *See, e.g.*, *Montanez*, 2011 WL 6757875, at *4; *Johns*, 2012 WL 368032, at *3. The alleged injuries suffered by Plaintiff and Class Members are the same and therefore the typicality requirement is met.

### D.   **The Plaintiff Satisfies the Adequacy Requirement**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." To determine if representation is adequate, the Court must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). This Court may presume that there is no conflict between the class representative and the class in the absence of contrary evidence. *See Harriss v. Pan Am. World Airways*, 74 F.R.D. 24, 43 (N.D. Cal. 1977). Plaintiff and his attorneys will fairly and adequately protect the interests of the class.

There are no conflicts of interest alleged or that could possibly exist here. Plaintiff seeks the exact same remedy as all Class Members: namely, relief to address the claims that the Monitor was defective and that Defendant falsely advertised the Monitor's features. Plaintiff's interests, therefore, are perfectly aligned with the interests of the Class. The adequacy of Plaintiff and his counsel is evidenced by the Settlement negotiated with Defendant, which provides for meaningful monetary relief to the Class.

Further, Plaintiff and the proposed Class are represented by qualified and competent counsel who have been previously appointed lead or co-lead counsel to act on

16

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
CASE NO. SACV-09-1366 DMG

behalf consumers as the accompanying firm résumés show.  Rivas Decl., Exh A; Fauth Decl., Exh. A. Plaintiff's Counsel have regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits that are similar in size, scope, and complexity to the present case.  *Id.* Plaintiff's Counsel have conducted extensive pre- and post-litigation investigation of the class claims, as discussed above, and are thus experienced and knowledgeable about the claims settled.  Rivas Decl. at ¶ 5.

### E.   The Class Satisfies the Criteria of Rule 23(b).

To certify a class under Rule 23(b)(3), a court must find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Both criteria are met in this case.  The primary purpose behind Rule 23(b)(3) is the vindication of the rights of people who would not have the economic power or incentive to bring a wrongdoer into court to redress a wrong imposed on them.

### 1.   Common Questions Predominate

The predominance inquiry considers whether "questions of law or fact common to the class will 'predominate over any questions affecting only individual members' as the litigation progresses." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds,* 133 S. Ct. 1184, 1195 (2013) (quoting Fed. R. Civ. P. 23(b)(3)). This analysis starts with the underlying causes of action.  *Erica P. John Fund, Inc. v. Halliburton Co.,* 133 S. Ct. 2179, 2184 (2011).

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 944 (9th Cir.2009) (quoting *Hanlon,* 150 F.3d at 1022). The objective is to aggregate small claims into a large enough recovery to make the cost and effort of the litigation economically feasible and to allow the courts to redress wrongs that could otherwise be imposed with impunity.  *See Amchem*, 521 U.S. at 617.  A class action

17

under Rule 23(b)(3) is also intended to achieve judicial economy, as well as economies of time, effort and expense. *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465 n.2 (9th Cir. 1973). "Thus, this requirement is essentially a heightened commonality inquiry: do the common legal and factual questions appear more significant than the individualized legal and factual questions?" *Thomas v. Baca*, 231 F.R.D. 397, 402 (C.D. Cal. 2005).  Notably, evaluation of Rule 23's predominance requirement on a settlement motion does not require an analysis of potential trial management problems. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

The focus of Rule 23(b)(3)'s predominance test is on whether the class claims arise out of the same legal or remedial theory. *See id*.  In analyzing whether common questions predominate, the Court must evaluate whether proving the elements of the claims can be done through common evidence applicable to the class as a whole, or whether the proof will be overwhelmed with individual issues. *See Hanlon*, 150 F.3d at 1022.  The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  As the Supreme Court has noted, predominance is a test readily met in cases alleging consumer fraud. *Id*. at 625. "[O]ne methodology is to determine whether the addition or subtraction of any class member would have "a substantial effect on the substance or quantity of the evidence offered." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir. 2004).  If manipulation of the proposed class members does not affect "the quantum of evidence introduced by the plaintiffs as a whole," then "common issues are likely to predominate." *Id.*

The legal and factual issues central to each of Plaintiff's claims are common to all Class Members.  One predominant common issue is whether Gateway's alleged uniform misrepresentations regarding, and promotion of, the use of XHD 3000 were likely to deceive reasonable consumers. Under the California consumer protection laws at issue,

whether consumers were likely to be deceived is an objective standard and most importantly, the focus is on the defendant's conduct, not the plaintiff's. *Williams v. Gerber*, 552 F.3d 934, 938 (9th Cir. 2008); *Yokayama v. Midland Nat'l Life Ins. Co*., 594 F.3d 1087, 1089, 1094 (9th Cir. 2010). Given the objective standard and focus on Defendant's conduct, common questions of law and fact predominate.

This question clearly predominates over individual questions because Defendant's alleged conduct affected all Class Members in the same manner. This weighs in favor of finding the requirements of Rule 23(b)(3) satisfied. *Moshogiannis v. Security Consultants Group, Inc*., No. 5:10-cv-05971 EJD, 2012 WL 423860, * 4 (N.D. Cal. Feb. 8, 2012); *see also Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1196-97 (6th Cir.1988). As *Johns* noted, "these predominant questions are binary—advertisements were either misleading or not, and Bayer's prostate health claim is either true or false." 280 F.R.D. at 557.

Finally, California consumer protection laws take an objective approach of the reasonable consumer, not the particular consumer. *Id.*; *Williams*, 552 F.3d at 938; *Yokayama*, 594 F.3d at 1089, 1094. Thus, when the only individual determination necessary is the amount of damages due to each class member, which itself does not defeat class certification, predominance is found. *Id.*

### 2. A Class Action Is The Superior Method For The Fair And Efficient Adjudication Of This Controversy

This case also meets the second requirement of Rule 23(b)(3): that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for courts to consider:

(A) [T]he interest of members of the class in individually controlling the prosecution…of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by…members of the class; (C) the desirability…of concentrating the litigation of the claims in the particular forum;

19

(D) the difficulties likely to be encountered in the management of a class action. Each of these factors counsels in favor of certifying the Class.

a. The Individual Class Members' Interest in Controlling the Litigation

First, there is little interest or incentive for Class Members to individually control the prosecution of separate actions. Each Class Member's individual claim is too small to justify the potential litigation costs that would be incurred by prosecuting the claims individually in court or arbitration. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175–76 (9th Cir. 2010). Although the injury resulting from Defendant's alleged failures to disclose are real and significant, the cost of individually litigating such a case against Gateway would easily exceed the value of any relief that could be obtained by any one purchaser. This, alone, warrants a finding that a class action is a superior method of adjudication. *See Tchoboian v. Parking Concepts, Inc*., No. SACV 09-422 JVS (ANx), 2009 WL 2169883, *7 (C.D. Cal. Jul. 16, 2009). Because the claims of each Class Member here are virtually identical, no one member of the Class would have a materially greater interest in controlling the litigation. *See Westways World Travel, Inc. v. AMC Corp.,* 218 F.R.D. 223, 240 (C.D. Cal. 2003).

b. Extent and Nature of Litigation Already Commenced by Class Members

Plaintiff is unaware of any other actions by Class Members against Defendant asserting similar claims as here. This factor also militates in favor of certification.

c. The Desirability of Concentrating the Litigation In a Particular Forum

Third, certifying the Class would be superior because concentrating this litigation in one forum would not only prevent the risk of inconsistent outcomes but would also "reduce litigation costs and promote greater efficiency." *Negrete v. Allianz Life Ins. Co.*

20

*of N. Am.,* 238 F.R.D. 482, 492 (C.D. Cal. 2006) (internal quotation and citation omitted). This "factor emphasizes the desirability of the forum selected, not the desirability of claims concentration generally." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 524 (D.N.J. 1997). The Central District is a compelling forum for this action as Gateway is headquartered in the District and the alleged misconduct emanated from this District.

d.  This Case is Manageable As a Class Action

Finally, the question here is "whether reasonably foreseeable difficulties render some other method of adjudication superior to class certification." *Id.* at 525. As the Supreme Court has held, manageability issues will not foreclose certification for settlement purposes. *See Amchem Prods., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Therefore, there are no serious manageability difficulties presented by conditionally certifying this case for settlement purposes, such as choice of law issues. A number of recent decisions from the Central District of California have certified nationwide classes under California law for litigation and settlement purposes. *See Pappas v. Naked Juice, et. al,* No. 11-cv-08276-JAK-PLA, Dkt. No. 188 (C.D. Cal. Jan. 22, 2014) (settlement class certified); *Johnson v. General Mills,* No. 10-00061, 2013 WL 3213832, at *1 (C.D. Cal. June 17, 2013) (same). As this case will not go to trial if finally approved, all that remains is ministerial claims administration. Plaintiff has satisfied the requirements of Rule 23(b)(3).

## VI.  THE PROPOSED NATURE AND METHOD OF PROVIDING CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Central Hanover Trust,* 339 U.S. 306, 314 (1950).

21

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
CASE NO. SACV-09-1366 DMG

Notice also must satisfy Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state the following in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; and (vi) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the proposed notice program, which includes both direct notice and published notice, is designed to reach at least 70 percent of the Class, which is reasonable under the circumstances. *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080 ("because defendants do not have a list of class members [] the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and [] settlement"); *Bellows v. NCO Fin. Sys.*, No. 3:07-cv-01413-W-AJB, 2008 WL 4155361, at *9 (S.D. Cal. Sept. 5, 2008) (summary notice in *USA Today*, with national distribution further directing class members to a settlement website was the best notice practicable under the circumstances).  Moreover, the Class Notice is written in easy and plain language and contains the information required by Rule 23(c)(2)(B). Stipulation, Exhs. 2 and 3.  Accordingly, the forms of notice and plan of dissemination should be approved.

## A.   <u>The Manner of Giving Direct Notice - By Email/First Class Mail - More than Meets Due Process Requirements</u>

Once the Court grants preliminary approval, notice must be given in a reasonable manner to all Class Members who will be bound by the Settlement. *See* Fed. R. Civ. P. 23(e)(1)(B).  There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974).  Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v.*

*Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981).

Here, the Long Form Class Notice will be delivered by email/first-class mail to the last known address of each Class Member for whom Defendant has such information in its registration records. Stipulation ¶ 7.2(a). Defendant estimates that it has direct contact information for approximately 30% of Class Members or 1,309 out of 4,481 purchases. As the highest and best level of class notice recognized by case law, individual mailed notice clearly comports with due process and meets the requirements of federal law. *See, e.g., Tulsa Professional Collection Servs., Inc. v. Pope,* 485 U.S. 478, 484, 491 (1988); *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 799-800 (1983); *Greene v. Lindsey,* 456 U.S. 444, 455 (1982); *Schroeder v. City of New York,* 371 U.S. 208, 214 (1962).

**B.**     **The Manner of Giving Indirect Notice - By Publication - More Than Meets Due Process Requirements**

As to the other Class Members for whom Defendant does not have direct contact information, the proposed Settlement provides for notice through Internet publication, through the Settlement website as described above in Section III. B, and a press release. *In re Netflix,* 2012 WL 2598819 at *4-5 (approving use of settlement website as part of a notice plan).  This plan for dissemination of notice is comprehensive and satisfies due process.  Accordingly, Plaintiff requests that the Court approve this plan for disseminating notice to the Class.

**C.**     **The Content of the Notice Satisfies Rule 23(e)**

The Class Notice (Long Form and Summary Notice) are written in simple, straightforward language and includes: (1) the settlement's essential terms; (2) disclosure of any proposed benefits to the class representative; (3) information regarding attorneys' fees and reimbursement of expenses; (4) the method for objecting to the settlement or to request exclusion; (5) the time and place of the fairness hearing; and (6) how to contact class counsel with inquiries. *Colesberry v. Ruiz Food Products Inc.,* No. CVF-04-5516-AWI, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006).

The Class Notice provides Class Members with sufficient information to make an

informed and intelligent decision about the settlement.  As such, it satisfies the content requirements of Rule 23.  *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003).

## VII.  **PROPOSED SCHEDULE**

The following is the schedule Plaintiff contemplates for the settlement approval process.  If the Court grants preliminary approval, these dates will be incorporated in the [Proposed] Order Certifying Class for Settlement Purposes, Granting Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to the Class.

| Event | Date |
| --- | --- |
| Deadline to begin disseminating Class Notice | Within fifteen (15) days after the entry of the order granting preliminary approval |
| Deadline for report verifying that Notice was properly disseminated | January 23, 2015 |
| Deadline for Plaintiff's Counsel to file motion for final approval and application for an awards of attorneys' fees and reimbursement of expenses and incentive award | January 23, 2015 |
| Deadline for Class Members to file objections to the settlement or request exclusion | February 6, 2015 |
| Deadline for Parties to respond to any Class Member objections | February 13, 2015 |
| Final Approval Hearing | February 27, 2015 |
| Deadline to Submit a Claim Form | Within 195 days following the entry of the order granting preliminary approval |

## VIII.  **CONCLUSION**

The proposed Settlement is presumptively fair, presents no obvious deficiencies, and therefore falls within the range of possible approval.  Accordingly, the Court should

24

1  grant preliminary approval of the proposed Settlement and enter an order substantially in

2  the form of the accompanying [Proposed] Order Certifying Class for Settlement

3  Purposes, Granting Preliminary Approval of Class Action Settlement and Directing

4  Dissemination of Notice to Class.

5  DATED: October 17, 2014              Respectfully submitted,

6                                      **FINKELSTEIN THOMPSON LLP**

7

8                                      By: /s/ Rosemary M. Rivas
                                       Rosemary M. Rivas
9                                      505 Montgomery Street, Suite 300
                                       San Francisco, California 94111
10                                     Telephone: (415) 398-8700
                                       Facsimile: (415) 398-8704
11

12

13                                     Gordon M. Fauth, Jr.
                                       **LITIGATION LAW GROUP**
14                                     1801 Clement Avenue, Suite 101
                                       Alameda, California 94501
15                                     Telephone (510) 238-9610
                                       Facsimile (510) 337-1431
16

17

18                                     *Counsel for Individual and Representative*
                                       *Plaintiff Mark Lima*
19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
CASE NO. SACV-09-1366 DMG